**Rafael FERNANDEZ–ROQUE, et al., Petitioners,**

v.

**William French SMITH, et al., Respondents.**

**Moises GARCIA–MIR, et al., Plaintiffs,**

v.

**William French SMITH, et al., Defendants.**

**Civ. A. Nos. C81–1084A, C81–938A.**

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 7, 1981.

Post Hearing ordered Aug. 20, 1981.

---

Dale M. Schwartz, John A. Pickens, Myron N. Kramer and Deborah S. Ebel, Atlanta, Ga., Frank P. Samford, III, Decatur, Ga., for petitioners.

Douglas P. Roberto, Asst. U. S. Atty., Atlanta, Ga., for respondents.

## ORDER

SHOOB, District Judge.

Presently pending in these consolidated actions are (1) plaintiffs' motion to amend the complaint by adding 28 U.S.C. § 2241 as an additional jurisdictional basis; (2) plaintiffs' motion to amend the complaint by adding a new cause of action under the Protocol Relating to the Status of Refugees; (3) the renewed motion for class cer-

tification of all Cuban detainees (the *Mir* class); and (4) plaintiffs' motion for the certification of subclasses, particularly those subclasses of Cuban detainees being held solely or primarily because they lack entry papers. The motions regarding class certification will be dealt with as a single motion.

## I.

Defendants have announced that they do not object to plaintiffs' motions to amend their complaint. Accordingly, plaintiffs' motions to amend their complaint are GRANTED, and defendants shall formally plead in response to the amended complaint within ten days from the date of this order.

■ The amendment to the complaint under the Protocol states a cause of action for which an additional form of relief—an injunction against return ("refouler") of Cuban detainees to Cuba (*see* Article 33 of the 1951 Convention Relating to the Status of Refugees)—may be appropriate. Since the affidavits attached to the motion to amend suggest that the return of any Cuban detainees would work to their irreparable harm, to avoid having this new issue mooted, the Court DIRECTS the defendants to advise this Court in writing within ten days from the date of this order whether they have any intention of trying to return the detainees to Cuba before the resolution of this action. Plaintiffs might wish to address the issue raised by the amendment by motion for summary judgment.

## II.

In opposing the motion for class certification respondents have incorporated in their brief the arguments made before this case was transferred from Kansas to Georgia. To the extent that these arguments were rejected by Judge Rogers in his Memorandum and Order of transfer dated May 12, 1981, Judge Rogers' reasoning is ADOPTED as the opinion of this Court. Before certifying a class and sub-classes, however, this Court wishes to address certain new arguments raised by respondents and certain reservations concerning class certification expressed by Judge Rogers.

### A.

■ Respondents contend that despite this class certification order, the possibility of confusion, duplication and overlap alluded to by Judge Rogers (*see* Memorandum and Order, May 12, 1981, at pages 10–12) still exists since at least one other case pending in the Northern District of Georgia, *Campos-Claro, et al. v. Crossland, et al.*, C81–266A, contains class action allegations similar to those raised here. *Campos-Claro*, however, is at an earlier state in proceedings than these consolidated class actions. Moreover, any possible duplication, confusion or overlap will be eliminated by this order. Respondents need only inform any other court in this district, before whom such a class certification motion is pending, of this order to avoid duplication, confusion or overlapping of classes.

### B.

■ Judge Rogers expressed a concern that certification might prove to be inappropriate, since the declaratory, injunctive or other relief (if any) granted the named plaintiff might be "equally effective whether or not the class was certified." Memorandum and Order of Judge Rogers, May 12, 1981, at page 9. However, the government's position is clear: it regards each class member as an individual case, and it will release only those Cuban detainees as it is ordered. In addition, it is clear from another Cuban detainee case that declaratory and injunctive relief as to named detainees will not make class certification inappropriate. In *Moises Garcia Mir v. Wilkinson*, Case No. 80–3139 (D.Kan., Sept. 2, 1980) (Rogers, J.), the district court ordered that "respondents provide each petitioner with a fair exclusion hearing within sixty (60) days from the date of this Order . . ." While respondents complied as to the seven named petitioners, eleven months have now passed, and respondents have *still* not afforded more than 100 potential class members an initial exclusionary hearing. Care-

ful consideration of the facts of this situation and the government's response to it supports the propriety of class certification.

### C.

■ The government argues that each Cuban detainee is in the Atlanta Federal Penitentiary because of the particular facts of his case, and that class certification under Fed.R.Civ.P. 23(b)(2) is impossible, since the government has refused to reinstate parole on grounds particular to each detainee.

It is true that there are important questions of fact peculiar to each detainee. However, that does not preclude the availability of all class relief. First, declaratory relief as to the rights of all class members or certain subclass members may be appropriate. Second, plaintiffs may be able to establish that as to discrete, readily identifiable subclasses, there has been an abuse of discretion in the District Director's refusal to reinstate parole as to the entire membership of the subclass. Third, as to other subclasses, it may be that the injunctive relief appropriate, if any, would be a hearing of some sort. The Court concedes that it is not prepared to make a determination whether each Cuban detainee is being legally detained, particularly if the government plans to interpose objections to the release of each detainee on the grounds that he is a threat to national security, is likely to abscond, or that petitioner might be a danger to U. S. persons or property if released. However, the Court may, if it determines relief is required, issue appropriate orders and authorize proceedings before a magistrate or a special master to speed a resolution of this case.

### D.

■ Finally, counsel for the government urges this Court to 'abstain' from further proceedings because the government itself is reviewing the situation. On July 22, 1981, the day before the in-chambers conference, the government announced a new program to apply to the 1,800 Cuban detainees incarcerated in Atlanta. The government asks this Court to give it a chance to implement this worthwhile plan, and not to divert INS resources from that plan by accelerating proceedings in this case. The Court will not interfere with the government's belated 'Status Review Plan and Procedures,' but it will not delay proceedings in this action, for the reasons that follow.

First, the procedure established will be quite time-consuming. There is *one* three-person review panel for all 1,800 Cuban detainees. Even if the review panel can review as many as five cases per day, an initial review by the panel of each detainee would take almost a year and a half. In addition, the review process itself contemplates at least a two-month time span for each case. At least thirty days prior to the panel review, a progress report must be completed by the institutional staff. The panel, prior to review, will then go over the detainee's file. A personal interview with each detainee will be held, unless the panel determines from just a review of the file that release is appropriate. "The detainee may be accompanied at the interview by a person of his choice to assist him in presenting his case or answering the panel's inquiries." [1] Status Review Plan and Procedures, pages 3–4. Within ten days, the panel will make a written recommendation on the question of release to the Commissioner of the Immigration and Naturalization Service in Washington. The INS Commissioner then has 30 days to accept or reject the recommendation. Thus, the first detainee reviewed and determined to be releasable under this plan would in all likelihood not be freed until the beginning of October. The plan, as to those detainees who are being held illegally, is too slow.

What is more, the entire plan can be brought to a halt for six months if the INS Commissioner "determines, after consultation with the Department of State, that it

---

1. If just 25% of the detainees are accompanied by *counsel*, it is highly unlikely that the review panel will manage to review five detainees per day.

, appears probable that the detainees can be returned to Cuba, ..." *Id.*, page 6.[2]

Finally, respondent's request for more time to see whether these class members really ought to be in a maximum security prison—after many have been there for fourteen months—is but another refrain of a tune that has played too long. Seven months ago, in the Garcia Mir class action, the attorney for the government (while this action was pending in Kansas) said virtually the same thing the government now says.

> The intent of the government has never been to detain these people in maximum security institutions forever. It was only yesterday that the processes of government have worked to the point where a plan can be approved at the levels necessary to put a program into action.

Transcript of Hearing on Plaintiffs' Motion for a Temporary Restraining Order, January 28, 1981, page 18. The Court will not delay the conduct of these proceedings pending implementation of the government plan.

### III.

In his memorandum and order of transfer dated May 12, 1981 in *Moises Garcia Mir*, Judge Rogers concluded at pages 7 through 9 that each of the four prerequisites of a class action found in Fed.R.Civ.P. 23(a) had been met. He further concluded that "[t]here can be no serious challenge" to plaintiffs' contention that the government has acted or refused to act on grounds generally applicable to the class. *Id.* at page 9. This Court concurs in those conclusions, for reasons set forth in Judge Rogers' opinion and for the additional reasons set forth briefly below, and hereby determines that this action ought to be maintained as a class action.[3]

**2.** *But see* page 119–120 of this order, *supra*, granting plaintiffs' motion to amend their complaint.

**3.** There is authority for the proposition that class actions may be maintained in habeas corpus cases, and in immigration cases. *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115

### A.

█ Plaintiffs must establish that the proposed class is "so numerous that joinder of all members is impracticable," Rule 23(a)(1). The main class now proposed is "all persons who are or were natives and citizens of Cuba whose parole has been revoked by the Immigration and Naturalization Service, and who are presently, or in the future will be, incarcerated at the United States Penitentiary in Atlanta, Georgia and who came to the United States from Cuba as part of the 'Freedom Flotilla' in 1980 and 1981." Estimates of the size of this group have ranged from 1,600 to 1,800. Professor Moore concluded that numbers in excess of one hundred or one thousand have sustained the numerosity requirement. 3B *Moore's Federal Practice*, ¶ 23.05[1], pages 23–150–55. Even if joinder in this action were *possible*, in the sense that a list of all class members could be compiled, joinder would still be impracticable. Most class members have little knowledge of English and less knowledge of our legal system and their rights. The burden on the Court, the local immigration bar and the U. S. Attorney's Office in Atlanta, if joinder were attempted, would be overwhelming.

The Court concludes that the numerosity requirement of Rule 23(a) has been met.

### B.

█ Next, plaintiffs must establish that there are questions of law or fact common to the class, Fed.R.Civ.P. 23(a)(2). Judge Rogers' discussion of this prerequisite is incorporated herein by reference, and the Court concludes that the commonality requirement here is met. The Court understands that each class member may have a different history; nonetheless, there are clearly common questions of law and fact in this action.

(2d Cir. 1974), cert. den. 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975). Even if no such authority existed, the unique facts presented by this case are among those for which the flexible class action rule was devised.

Judge Rogers noted in his order of transfer that, at the time, plaintiffs were "not asking for the release of all class members." Plaintiffs now do seek the immediate release of all members of certain proposed subclasses. To the extent that Judge Rogers indicated that he would require the individual examination of each detainee's personal history before release, he did not anticipate the argument raised here that as to certain subclasses, continued incarceration constitutes classwide abuse of discretion. Since the relief sought by plaintiffs has changed, this Court declines to adopt that portion of Judge Rogers' opinion.

### C.

The government does not seriously oppose plaintiffs' showing that the claims of the representative parties are typical of the claims of the class, Fed.R.Civ.P. 23(a)(3). Accordingly, the Court concludes that this requirement has been met.

### D.

█ The final prerequisite for class certification is that the representative parties will fairly and adequately protect the interests of the class. Rule 23(a)(4). This Court conducted a thorough inquiry in chambers as to the time and resources of the attorneys representing the class and is convinced that the representative parties, through their attorneys, will fairly and vigorously represent the class members' interests, and do so with better than average skill. There is no contention that the interests of any detainees in this litigation are antagonistic to the interests of other detainees.

Thus, the four prerequisites of Rule 23(a) for class certification have been established by plaintiffs.

4. While plaintiffs did not argue this point, the Court notes that
    (1) the prosecution of separate actions by or against individual members of the class would create a risk of
    (A) inconsistent or varying adjudications with respect to individual members of the

### E.

█ As noted above, Judge Rogers concluded that there can be "no serious challenge" to plaintiffs' motion for class certification pursuant to Rule # 23(b)(2). Rule 23(b) provides that

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.    .    .    .    .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; ...

Despite the government's contention that it is detaining each class member on the basis of his particular facts, this Court concludes that certain of the grounds on which the government is acting or refusing to act are "grounds generally applicable to the class," and thus conditional certification of a Rule 23(b)(2) class is appropriate.[4]

### IV.

Accordingly, plaintiffs' motion for class certification is GRANTED. The Court conditionally CERTIFIES a class of all Cuban nationals whose parole has been revoked by the INS, who are presently incarcerated at the Atlanta Federal Penitentiary or who will be incarcerated there, and who arrived in the United States from Cuba as part of the 'Freedom Flotilla' in 1980.

### V.

Plaintiffs, pursuant to this Court's in chambers request, have filed a proposed order of class certification which includes eleven subclasses. *See* proposed order, filed July 29, 1981, at pages 2–3. The government has now filed its response. The Court appreciates the government's cooperation

class which would establish incompatible standards of conduct for the party opposing the class, ...
Fed.R.Civ.P. 23(b). Thus, certification under Rule 23(b)(1)(A) might very well be appropriate also.

and thoughtful class suggestions. After a great deal of consideration, this Court hereby conditionally CERTIFIES the following subclasses of the class certified above.

1. Those Cuban detainee class members who were charged by the INS on its form I–22 as being excludable from the United States solely for lack of entry papers, 8 U.S.C. § 1182(a)(20).

2. Those Cuban detainee class members, other than those in subclass (1), above, who have or will have had their exclusion hearings, and who have been found or will be found to be excludable solely on the basis of lack of entry papers (8 U.S.C. § 1182(a)(20)) after an exclusion hearing at which the Immigration Judge heard evidence on all grounds of exclusion the detainee was charged with.

3. Those Cuban detainee class members who have been or will be determined by the Immigration Judge to be excludable on two or more grounds, but whose excludability determination was or will be affirmed by the Board of Immigration Appeals solely on the basis of 8 U.S.C. § 1182(a)(20).

4. Those Cuban detainee class members who have had or will have exclusion hearings at which the Immigration Judge determined them to be excludable solely on the basis of 8 U.S.C. § 1182(a)(20), but where the Immigration Judge did not hear all the evidence on other grounds for exclusion with which the detainee was charged.

5. Those Cuban detainee class members who have had or will have exclusion hearings, and who have been found or will be found by the Immigration Judge to be excludable for conviction of, or admission of the essential elements of, any crime in Cuba which would constitute a misdemeanor under the Criminal Code of the District of Columbia.

6. Those Cuban detainee class members who have had or will have exclusion hearings, and who have been found or will be found to be excludable for conviction of, or admission of the essential elements of, any crime in Cuba which would constitute a felony under the Criminal Code of the District of Columbia, but is not a crime of violence against the person.

7. Those Cuban detainee class members who would fall into any one of subclasses (1) through (6), but who have been accused by the government of committing a crime in the United States, which alleged crime the government has *not* argued is a basis for exclusion. This subclass shall include

(a) class members accused of crime but not yet indicted;

(b) class members indicted but not tried; and

(c) class members indicted, tried and acquitted.

8. Those Cuban detainee class members who would fall into any one of subclasses (1) through (6), but who have been or will be indicted, and who have been or will be convicted of committing a crime in the United States.

9. Those Cuban detainee class members who have had or will have exclusion hearings and who have been found or will be found to be excludable for conviction of, or admission of the essential elements of, any crime in Cuba which would constitute a felony crime against the person, short of a capital offense, under the Criminal Code of the District of Columbia.

10. Those Cuban detainee class members who have had or will have exclusion hearings, and who have been found or will be found to be excludable for conviction of, or admission of the essential elements of, any crime in Cuba which would constitute a capital felony under the Criminal Code of the District of Columbia.

11. Those Cuban detainee class members who have had or will have exclusion hearings and who have been or will be determined to be excludable under 8 U.S.C. § 1182(a)(2), (a)(3), or (a)(4) (relating to insanity).

12. Those Cuban detainee class members who come within none of the above subclasses.[5]

---

**5.** Should a Cuban prisoner fall into two or more subclasses as defined above, he shall be regarded as a member of the subclass with the higher or highest number.

The government's brief in support of its proposed order affords this Court the opportunity to make explicit an assumption it has made. The government takes issue with the plaintiffs' class scheme, substantially adopted by the Court, as being based on excludability determinations made by the Immigration Judges, when this action seeks review of the decisions of the District Director concerning parole, *not* excludability decisions. It is true that the two decisions are quite distinct; but much of what must be considered in making one decision must necessarily be considered in making the other. Thus the excludability categories should provide a fairly reliable indicator of how much 'bad information' the government has about a given detainee.

In addition, it seems unfair, as a general rule, for the government not to be bound by the determinations of fact made after a hearing by its own Immigration Judges and the Board of Immigration Appeals. Further, the government will have an opportunity under the terms of this order to furnish the Court, as hereinafter provided, with specific objections to the release of each class member.

Finally, the classes proposed by plaintiffs and adopted herein, based as they are on excludability criteria, are more streamlined. In light of the government's poor record in defending the legality of detention of these Cuban prisoners, *see Genaro Soroa-Gonzalez v. Civiletti*, C80–1356A (N.D.Ga.1981); *Luis Perez Ramirez v. Smith*, C80–1825A (N.D. Ga.1981); *Fernandez v. Wilkinson*, 505 F.Supp. 787 (D.Kan.1980), *aff'd sub nom., Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981),[6] anything which expedites judicial review is helpful.

## VI.

To facilitate the swift adjudication of this long-delayed controversy, IT IS ORDERED:

**6.** *See also Mario Solano-Vazquez v. Smith*, C81–1359A (N.D.Ga., Aug. 4, 1981) (government consented to parole).

(1) that defendants SHOW CAUSE before this Court on Monday, August 17, 1981, at 10:00 am in Courtroom 1905, why those class members in subclasses (1) and (2) should not be released on parole on terms to be fixed by this Court;

(2) that defendants provide the Court and counsel for plaintiffs with a list of names of the detainees in each of subclasses (1) and (2), no later than 2:00 pm, August 14, 1981;

(3) that no later than 2:00 pm, August 14, 1981, the government provide the Court and counsel for plaintiffs with a list of those members of subclasses (1) and (2) as to whom it does not object to release on parole at this time, and those of said subclasses as to whom it contends the parole of the Cuban detainee (a) will constitute a serious threat to national security; (b) will likely result in the detainee's absconding; or (c) will be against the public interest for reasons not readily apparent (such as indigency and lack of knowledge of English, which can be ameliorated by a sponsor). As to those detainees the government contends should not be released on parole, the government shall furnish the Court and counsel for plaintiffs with a short statement of the reason(s) why the government contends the detainee is a threat to the national security or likely to abscond, or why the detainee's release on parole will be contrary to the public interest. *Cause* as contemplated by this order shall *not* include evidence adverse to plaintiff members of subclasses (1) and (2) which has been heard and determined adversely to the government by an Immigration Judge. Nor shall cause include evidence of any conviction of a Cuban detainee by a 'revolutionary tribunal' for a political crime. Finally, cause as to subclasses (1) and (2) shall not be shown by any disciplinary offense short of a crime committed while in INS custody by the detainee *after* his exclusion hearing;

(4) that the government provide the Court on August 17, 1981 with a status

report on the progress of the release procedures instituted by the Attorney General, including the number of detainees released and the expected dates of future releases;

(5) that the government SHOW CAUSE on August 20, 1981, at 10:00 am in Courtroom 1905, why those class members in subclasses (3) and (4) should not be released on terms to be fixed by this Court;

(6) that the government provide the Court and counsel for plaintiffs with the same information on subclasses (3) and (4) as is required of subclasses (1) and (2), no later than 2:00 pm, August 18, 1981.

(7) that the government SHOW CAUSE on August 24, 1981, at 10:00 am in Courtroom 1905, why those class members in subclass (5) should not be released on terms to be fixed by this Court;

(8) that the government provide the Court and counsel for plaintiffs with the same information on subclass (5) as is required of subclasses (1) and (2), no later than 2:00 pm, August 21, 1981;

(9) that the government SHOW CAUSE on August 27, 1981 at 10:00 am, in Courtroom 1905, why those class members in subclass (6) should not be released on terms to be fixed by this Court;

(10) that the government provide the Court and counsel for plaintiffs with the same information on subclass (6) as is required of subclasses (1) and (2), no later than 2:00 pm on August 25, 1981;

(11) that the government SHOW CAUSE on August 31, 1981, at 10:00 am in Courtroom 1905, why those class members in subclasses (7) and (8) should not be released on terms to be fixed by this Court;

(12) that the government provide the Court and counsel for plaintiffs with the same information on subclasses (7) and (8) as is required of subclasses (1) and (2), no later than 2:00 pm on August 28, 1981;

(13) that the government SHOW CAUSE on September 3, 1981, at 10:00 am in Courtroom 1905, why those class members in subclasses (9) and (10) should not be released on terms to be fixed by this Court;

(14) that the government provide the Court and counsel for plaintiffs with the same information on subclasses (9) and (10) as is required for subclasses (1) and (2), no later than 2:00 pm on September 1, 1981;

(15) that the government SHOW CAUSE on September 8, 1981, at 10:00 am in Courtroom 1905, why those class members in subclass (11) should not be released on terms fixed by this Court;

(16) that the government provide the Court and counsel for plaintiffs with the same information on subclass (11) as is required for subclasses (1) and (2), no later than 2:00 pm on September 4, 1981;

(17) that the government SHOW CAUSE on September 10, 1981, at 10:00 am in Courtroom 1905, why those class members in subclass (12) should not be released on terms fixed by this Court;

(18) that the government provide the Court and counsel for plaintiffs with the same information on subclass (12) as is required for subclasses (1) and (2), no later than 2:00 pm on September 8, 1981.

### VII.

In conclusion, plaintiffs' motions to amend their complaint are GRANTED, and defendants are ORDERED to formally plead in response to the amended complaint within ten days from the date of this order. Defendants are further DIRECTED to respond in writing within ten days from the date of this order as directed on page two of this order. Plaintiffs' motion for the certification of a class and subclasses is GRANTED, and the Court conditionally CERTIFIES a class of all Cuban nationals whose parole has been revoked by the INS, who are presently incarcerated at the Atlanta Federal Penitentiary or who will be incarcerated there, and who arrived in the United States from Cuba as part of the 'Freedom Flotilla' in 1980. The Court conditionally CERTIFIES 12 subclasses.

Finally, the government is ORDERED to SHOW CAUSE on Monday, August 17, 1981, why Cuban detainees who are members of subclasses (1) and (2) should not be

released on parole on terms fixed by this Court. Further show cause and other orders are to be found in Part VI. of this order.