Albert **RODRIGUEZ** (by his next friend Manuel **RODRIGUEZ**), Armando Rodriguez (by his next friend Manuel Rodriguez), Abram Rodriguez, Alfonso Rodriguez, Concepcion Lozano, Abel Castillo, Porfirio Garcia, Jaime Garcia (by his next friend Porfirio Garcia), Jose Garcia, Elizabeth Garcia, Joseph Laulom, Eulalio Nunez, Sr., Leanor Nunez, Graciela Nunez, Alfredo Nunez, Eulalio Nunez, Jr. (by his next friend Eulalio Nunez, Sr.), Margarito Luna (by his next friend Eulalio Nunez, Sr.), Carlos Luna (by his next friend Eulalio Nunez, Sr.), John Doe, I, and John Doe, II, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**BERRYBROOK FARMS, INC.,** Guadalupe Rodriguez, and Elida Garcia, Defendants.

No. K86–161.

United States District Court, W.D. Michigan.

Sept. 24, 1987.

Michigan Migrant Legal Assistance Project by Gary Gershon, and by Janice R. Morgan, Berrien Springs, Mich., for plaintiffs.

Butzbaugh & Ryan by John Dewane, St. Joseph, Mich., for defendant Berrybrook Farms.

Kendall MacLeod, Kalamazoo, Mich., for defendant Guadalupe Rodriguez & Elida Garcia.

## OPINION

ENSLEN, District Judge.

Plaintiffs are migrant farmworkers who were allegedly recruited by defendants Guadalupe Rodriguez and Elida Garcia to work for defendant Berrybrook Farms ("Berrybrook"). Berrybrook is an agribusiness which employed hundreds of agricultural laborers during the 1985 harvest season. Plaintiffs allege that in exchange for their labor the defendants housed them in rural shacks which were declared uninhabitable and which were refused occupancy permits by the Michigan Department of Health. Plaintiffs further allege that defendants then forced them to pay rent for these shacks by taking the rent money out of their paychecks without legal authorization and without having disclosed their intentions *at the time of recruitment and hiring*. Finally, plaintiffs allege that defendants Rodriguez and Garcia were in charge of the plaintiffs' housing although Rodriguez and Garcia were not licensed by the U.S. Department of Labor to house migrant farmworkers. Plaintiffs allege that the defendants' acts constitute numerous violations of both the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.* and the Michigan Consumer Protection Act ("MCPA"), M.C.L.A. § 445.901 *et seq.* *See* Plaintiff's Brief in Support of Motion for Summary Judgment at 1. Plaintiffs

**1012**

filed this action as a class action and their motion for class certification is currently pending before this Court. Also pending are motions for summary judgment filed by the plaintiffs and defendants Rodriguez and Garcia.

*Plaintiffs' Motion for Class Certification*

*Standard*

Class action devices serve the interests of judicial economy and are appropriate when "the issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979). In *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), the Supreme Court indicated that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." This Court has attempted to engage in just such an analysis and has relied upon plaintiffs' brief in support of class certification, the pleadings, as well as the relevant portions of plaintiffs' motion for summary judgment and the supporting documents (including numerous affidavits of the named plaintiffs, etc.) attached to plaintiffs' motion. The Court has also been assisted by defendant Berrybrook's brief in opposition to plaintiffs' motion for summary judgment and the documents it submitted in support of that motion. To a lesser extent the Court has relied upon defendants Rodriguez and Garcia's brief in support of their motion for summary judgment. The Court also notes that defendant Berrybrook did not file a motion in opposition to plaintiffs' motion for class certification and that defendants Rodriguez and Garcia filed a one page brief, unsupported by any legal authority.

Plaintiffs seek to represent a class and three subclasses. Before the Court considers whether plaintiffs have met the Rule 23(a) test, it must first find that a precisely defined class exists, *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) and that the class representatives are members of the proposed class. *See East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977). Here, the named plaintiffs have proposed to represent the class of all agricultural workers who had rental fees deducted from their paychecks by Berrybrook Farms during the 1985 agricultural season. The Court believes this definition, which specifies a group of agricultural laborers during a specific time frame and at a specific location who were harmed in a specific way, satisfies the "precisely defined" requirement as to this large class. *See e.g., Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C.1986) (discussing in depth class certification and related issues in the migrant worker context).

Plaintiffs also indicate that based on information received during discovery, they now seek to modify the definitions of the two subclasses originally proposed in their complaint to include three subclasses. The first proposed subclass consists of all agricultural laborers whom the defendants housed in unlicensed labor camps during the 1985 agricultural season. The Court finds this definition precisely defines the first subclass. The second proposed subclass consists of all agricultural laborers for Berrybrook who did not receive accurate disclosures of the terms and conditions of employment and housing at Berrybrook for the 1985 season. The third proposed class would include all workers housed at Berrybrook in 1985 by farm labor contractors who were not authorized by the U.S. Department of Labor to house migrant workers. The Court finds that the second and third subclasses also satisfy the precisely defined requirement. The Court notes that the class certification device is flexible and that the practice of defining subclasses and of decertifying an existing class often accommodates the products of discovery and even developments at trial. *See e.g., Avagliano v. Sumitomo Shoji am, Inc.*, 103 F.R.D. 562 (S.D.N.Y.1984).

The second preliminary step requires that the Court must find that the named class representatives are members of the proposed class(es). The Court finds that

the affidavits of the original plaintiffs filed to date adequately indicate that they are all members of the classes and subclasses they propose to represent. *See e.g.*, the Deposition of Jaime Garcia, Elizabeth Garcia, Jose Garcia, Alfonso Rodriguez (establishing each named plaintiff as a representative of the primary class as well as a representative of each of the three subclasses).

In addition to the preceding "implicit" requirements, in order to maintain a class action a party must satisfy all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one requirement of Rule 23(b). Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Further, Rule 23(c)(4)(B) states: "When appropriate . . . a class may be divided into subclasses and each subclass treated as a class, and the provisions of the rule shall be construed and applied accordingly." Thus, it is well settled that each subclass must independently satisfy the class action criteria. In determining whether the Rule 23(a) tests are satisfied, a court may not use irrebuttable presumptions which involve, for example, the existence of an "inherent class." *See General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

*Discussion*

1. *Numerosity*

■ It is well settled that while there are no "magic numbers" which automatically signify the existence or non-existence of a class action, the general rule of thumb is that plaintiffs should be so numerous so as to make it impracticable to bring them all before the court. Rule 23(a)(1). *See e.g., Dale Electronics, Inc. v. RCL Elec-*

*tronics, Inc.*, 53 F.R.D. 531 (D.N.H.1971). *See also* Moore, *Moore's Federal Practice*, ¶ 23.05[1], at 23–151; 13–155 (2d Ed.1985) (citing modern trend and noting number under 21 usually not enough; between 21 and 40 mixed response; and where numbers are over 40 and in excess of one hundred always satisfactory).

■ The Court notes further that "impracticable" does not mean "impossible." Plaintiffs need only demonstrate that it is extremely inconvenient or difficult to join the members of the class. Wright & Miller, *Federal Practice Procedure*, § 1672 at 573. Further, mere speculation as to the number of parties involved is insufficient to satisfy Rule 23(a)(1). *See Weathers v. Peters Realty Corporation*, 499 F.2d 1197 (6th Cir.1974). Still, where the exact size of a class is not known, but common sense indicates that the number is large, courts have sometimes taken judicial notice of the size of the class and assumed that joinder is impracticable. *Cf. Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D.Pa.1980); *see also Evans v. United States Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir.1983) (plaintiffs not required to show exact size of class and doubts should be resolved in favor of certifying the class).

Plaintiffs estimate, based upon their analysis of computerized payroll information produced by Berrybrook, that the "large class" consists of some 635 persons who all had their rental fees deducted from their paychecks by Berrybrook in 1985. The Court notes that in defendant Berrybrook's counterstatement of facts it suggests that it employed between 38 and 435 agricultural laborers, not *all* of whom were migrant workers during the 1985 harvest. *See* Brief of Defendant Berrybrook in Opposition to Plaintiff's Motion for Summary Judgment (emphasis added).

Defendants Rodriguez and Garcia appear to argue that there are no adequate affidavits or proof by any other means to show that defendants committed any error against any other persons than those listed as plaintiffs. Defendants' argument in part suggests a "numerosity problem," but

also implies that plaintiffs have failed to satisfy the typicality requirement. The Court will address the latter argument in due course. Moreover, when the Court considers the affidavits which plaintiffs have submitted and the nature of this claim as well as the pleadings, including the answers of defendant Berrybrook, the Court believes that plaintiffs have carried their burden of proof with respect to the numerosity issue as to all agricultural workers who had rental fees deducted from their paychecks by Berrybrook Farms during the 1985 agricultural season. *See Cash v. Swifton Land Corporation,* 434 F.2d 569, 571 (6th Cir.1970) (indicating numerosity burden is on plaintiff).

In reaching its conclusion, the Court has also considered numerous other factors which courts have sometimes considered in determining whether joinder is impracticable. 1) *Geographical dispersion* —Plaintiffs argue that the twenty named plaintiffs are a small and random sample of defendants' work force and are permanent residents of Texas, Ohio, Iowa, Michigan and Florida. Complaint at 2–3. Plaintiffs argue that potential class members are by definition "migratory" and quite poor, making it impracticable, if not impossible, for the class members to be joined. 2) *Lack of Sophistication* —Plaintiffs make the related argument that the lack of formal education, English language skills, and knowledge of the legal system of most of the migrant workers involved would place a burden on the court if the members were joined. *See e.g., Fernandez–Rogue v. Smith,* 91 F.R.D. 117, 118, 122 (N.D.Ga. 1981). 3) *Class Members' Reluctance to Sue Individually* —Finally, plaintiffs argue that while none of the potential class members is permanently employed by the defendants, many return to work year after year and would be reluctant to sue because of jeopardizing their chances to be rehired and/or because they fear they may be "blacklisted" by other employers. On the whole, the Court finds plaintiffs' additional arguments persuasive and applicable to the three subclasses as well as the "large" class.

Plaintiffs estimate that the first subclass of all workers housed in unlicensed labor camps at Berrybrook in 1985 consists of at least 51 members. Plaintiffs base their estimates on Michigan Department of Public Health records which indicate that Murdock camp houses 21 workers and that Steinke camp houses 30 workers. The Court finds plaintiffs' estimate to be based on more than mere speculation and that they have carried their burden as to the first requirement.

Plaintiffs estimate that the second subclass contains at least 140 persons who did not receive accurate disclosure of the terms and conditions of employment and housing at Berrybrook in 1985. Plaintiffs base their assertion on the estimate made by defendant Guadalupe Rodriguez that Berrybrook employed approximately 140 workers in its 1985 harvest. Plaintiffs contend that no worker employed before the cherry harvest (which occurs *after* the picking of strawberries) received a disclosure of the housing fee. Again, the Court finds plaintiffs have done more than merely speculate on the numbers of potential plaintiffs and have carried their burden with respect to the second subclass.

Plaintiffs argue that the third subclass consists of at least one hundred members of the crews of Elida Garcia and Guadalupe Rodriguez. Plaintiffs again reach their conclusion based upon the deposition estimates of defendants Garcia and Rodriguez. Plaintiffs contend that these defendants housed their crew members without the authorization of the U.S. Department of Labor. Applying the same reasoning to this subclass, the Court again concludes that plaintiffs have met their burden as to the first requirement.

### 2. *Commonality*

Plaintiffs argue that the members of the class and the members of each subclass share virtually identical legal and factual issues. Plaintiffs allege the following as common questions of fact: 1) whether the defendants deducted rental fees from the workers' paychecks; 2) whether defendant disclosed in writing at the time of recruit-

ment the costs of housing to be provided to the plaintiffs; 3) whether the defendants housed workers in unlicensed labor camps; 4) whether the defendant farm labor contractors obtained U.S. Department of Labor certification to house migrant workers.

Similarly, plaintiffs allege the following common questions of law: 1) whether defendants' imposition of a rental fee constitutes a violation of the terms of a working arrangement with respect to housing contrary to AWPA, 29 U.S.C. § 1822; 2) whether the defendants' acts were unfair, unconscionable or deceptive under the Michigan Consumer Protection Act, M.C.L.A. § 445.903; 3) whether the defendant farm labor contractors were required to obtain housing authorization from the U.S. Department of Labor under AWPA, 29 U.S.C. § 1811.

Defendants Rodriguez and Garcia argue that the questions of law and fact set forth above do not affect all of the sued defendants, that the questions of law and fact are not common to any of the alleged class and the plaintiffs' conclusions may or may not apply to [all other] workers. Finally, defendants argue that, in any event, most of the questions of law and fact do not apply to defendants Garcia and Rodriguez.

■ At the outset, the Court notes that Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. *See e.g., Port Auth. Police Benevolent Assn. v. Port Auth.*, 698 F.2d 150 (2d Cir.1983). Where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected. Moreover, the clear language of the rule indicates that a common question of either fact *or* law will satisfy the requirement. It is manifest that in the list set forth above plaintiffs have alleged "at least one issue the resolution of which would affect all or a significant number of the putative class members" of the primary class and each of the three subclasses. *See Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982).

■ The Court believes that the common issues of law concerning the legality of defendant practices with respect to AWPA and MCPA here overrides any factual differences which may exist among class members with respect to those claims. Moreover, the Court is not persuaded by defendants' divergent liability argument. In *Marchwinski v. Oliver Tyrone Corp.*, 83 F.R.D. 606 (W.D.Pa.1979), the trial court certified one class of female employees and a smaller subclass. Moreover, the named plaintiffs represented both classes. Plaintiffs sued their employer for employment discrimination and the union for breach of the duty of fair representation. The union was liable to the large class because it had the statutory duty of fair representation, while the employers were only responsible to the subclass, the union members who had worked for them. The Court finds *Marchwinski* applicable here.

The Court notes that when monetary damages as well as declaratory and injunctive relief are sought, courts often seek, on their own initiative, "to confine the class more narrowly in order to protect the defendant in preparing his defense against various damage claims and to make the disposition of the class action more manageable since the evidence as to individual claims may vary widely in scope and character." *Weathers, supra,* at 1200. Here, the Court believes that plaintiffs have merely properly specified subclasses with respect to monetary damages as well with respect to their request for injunctive relief. The satisfaction of the rule 23(a)(2) requirements will help the court to resolve potential notice problems and to determine which parties will be bound by a final judgment. The Court emphasizes, however, that even after a class has been certified, discrete issues with respect to individual defenses against class plaintiffs may emerge, and even where a violation is established, there may be questions as to the type or amount of relief an individual class member may be entitled to receive. Still, for all the reasons set forth in this section, the Court finds that plaintiffs have carried their burden with respect to the "common-

ality" requirement as to the large class as well as to each of the three subclasses.

### 3. *Typicality*

Courts and commentators alike have often observed that the requirements of typicality and commonality merge. *See e.g., Falcon, supra,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. The Court notes that it is also true that as a general matter questions of typicality and adequacy of representation focus on the ability of the plaintiff to fairly represent the interests of the class, while numerosity and commonality are interdependent and relate to the question of impractical joinder. *Id.*

The named plaintiffs argue that they are members of the class who were recruited in 1985 by the contractor defendants employed by Berrybrook. Plaintiffs assert that they were not advised before accepting employment that they would be charged a housing fee and that they are pursuing the same legal interests as the class members. Moreover, plaintiffs assert that there are no conflicts or substantial diversity of interest within the class. *See Kinsey v. Legg, Mason and Co.,* 60 F.R.D. 91, 99 (D.D.C.1973).

Defendants Rodriguez and Garcia argue that plaintiffs have not submitted adequate affidavits or other proof demonstrating that the defendants committed any error against any other person than those listed as plaintiffs. The Court believes that defendants are arguing that plaintiffs have not provided the Court with a sufficient basis for justifying the additional inference involved here: that the alleged practices and factual predicates are typical of the defendants' practices with respect to the automatic "rental fee" deductions and related housing violations which occurred during the 1985 season. The Court believes that at first blush a consideration of the typicality requirement presents a somewhat closer question than did the first two requirements—at least with respect to the second subclass—in that defendants argue that some workers "just show up" and defendants did not mislead these workers with respect to the terms of employment

and housing occupancy. *See* Rodriguez Dep. at 18–19; *but* see Dep. at 13–14. Still, the Court has thoroughly reviewed the pleadings, portions of the deposition testimony submitted by both parties in their briefs in support of and in opposition to their respective motions for summary judgment, and the named plaintiffs' affidavits. The Court finds that the plaintiffs have provided a sufficient basis for justifying the additional inference with respect to the recruiting, hiring, and housing practices of the defendants during the relevant periods of the 1985 harvest, that the defendant labor contractors' behavior and practices, as well as the defendant company's practices were typical for the type of claims alleged as to the primary class and each of the subclasses.

Here, plaintiffs are arguing that the defendants told no one prior to June 28, 1985 about the weekly rent deduction. The question of whether an individual worker may have simply shown up, rather than being recruited or "misled" by any of the defendants is relevant to the typicality issue only with respect to the second subclass. The Court, believes, however, that the factual question of whether a particular worker was actively misled or misled in precisely the same way is a distinction more relevant as a (personal) defense to some of the particular claims made under AWPA and MCPA, rather than as an objection to the "typicality" requirement.

The Court believes that the plaintiffs have satisfied their burden of showing that the common question arises from the same nucleus of operative facts. Defendants do not dispute the claim that no worker employed before the cherry harvest received a disclosure of the housing fee. Moreover, it is permissible that the underlying facts of the case may fluctuate over the class period and vary among the individual class members. *See In re Asbestos School Litig.,* 104 F.R.D. 422 (E.D.Pa.1984) *aff'd in part, vacated in part,* 789 F.2d 996 (3d Cir.), *cert. denied* (2 cases), — U.S. —, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986); — U.S. —, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986) (tort). Plaintiffs would have the

Court certify the second subclass as to all workers who did not receive accurate disclosure of the terms and conditions of employment and housing at Berrybrook in 1985. Plaintiffs have alleged that no worker before the cherry harvest received a disclosure of the housing fee. The Court is assisted in making its determination by the deposition testimony of defendants Rodriguez and Garcia. *See* Garcia Deposition at 17–18; Rodriguez Deposition at 15 & 19. For all the reasons previously set forth, the Court finds that the "typicality" requirement has also been satisfied as to the major class and each of the three subclasses. (The Court cautions that it is free to modify a class in the light of subsequent developments in the litigation. It may well be that based on developments at trial this subclass or possibly other subclasses will have to be modified and/or decertified at least with respect to the MCPA claims and possibly some of the AWPA claims.)

### 4. *Adequacy of Representation*

■ In *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976), the Sixth Circuit established a two-prong test with respect to the adequacy requirement in class actions. The two requirements are: 1) the representative must have common interests with the unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. It is beyond argument that plaintiffs have satisfied the first requirement as their interests are virtually identical with those of the class on all issues. The second *Senter* requirement is also readily met as plaintiffs' counsel, Michigan Migrant Legal Assistance Project, Inc. ("MMLAP"), has litigated numerous cases in the agricultural employment law area. There can be no doubt that the plaintiffs will prosecute the case vigorously in part because of the experience and expertise of plaintiffs' counsel, MMLAP.

Moreover, defendants have raised no objections with respect to the adequacy requirement, and the burden is on the defendant to demonstrate that the representation will be inadequate. *See e.g., Lewis v. Cur-*

*tis,* 671 F.2d 779, 788 (3d Cir.1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). The Court finds that the named plaintiffs will adequately represent the unnamed plaintiffs in the major class as well as in the three subclasses.

### *Rule 23(b)(2) Test*

■ Plaintiffs seek class certification under Rule 23(b)(2). Rule 23(b)(2) requires that 1) the party opposing class certification act on grounds generally applicable to all class members. *Thomas v. Clarke,* 54 F.R.D. 245 (D.Minn.1971); and 2) that the party requesting class certification request injunctive or declaratory relief. *See Walker v. Houston,* 341 F.Supp. 1124 (S.D.Tex. 1971).

Plaintiffs argue that the defendants acted on grounds generally applicable to the class members in that no worker employed before June 28, 1985 was informed that there would be a housing fee. Further, plaintiffs argue that every worker who lived in Berrybrook's labor camps after June 28, 1985 had the housing fee deducted from his or her paycheck. Finally, plaintiffs argue that the workers who lived in the Steinke and Murdock labor camps lived in unlicensed labor camps and were housed by unauthorized contractors contrary to the relevant provisions of the AWPA.

Second, plaintiffs have requested final declaratory and injunctive relief to ensure that the defendants cease violating the AWPA and the MCPA. Plaintiffs correctly point out that the certification of a class action under subdivision (b)(2) does not prevent the court from awarding monetary relief to class members when the primary relief sought is injunctive or declaratory. *See e.g., Parker v. Local Union No. 1466, United Steelworkers,* 642 F.2d 104 (5th Cir.1981).

The Court emphasizes that in ruling on plaintiffs' motion for class certification it has not and cannot properly consider the merits of the case. Plaintiffs need not even establish the existence of a cause of action in order to have a class certified, but rather the Court must merely be satisfied that the plaintiffs claim is more than friv-

olous or "insubstantial." *See e.g., Keasler v. Natural Gas Pipeline of Am.,* 84 F.R.D. 364 (E.D.Tex.1979).

In sum, for all the reasons previously set forth, the Court finds that plaintiffs have satisfied all the prerequisites for having a class certified pursuant to Rule 23(b)(2). Accordingly, plaintiffs motion for class certification is granted. The Court will enter an order granting plaintiffs' motion and defining the class and subclasses which have been certified consistent with this opinion.

*Defendants Rodriguez and Garcia's Motion for Summary Judgment*

The general standard for deciding motions for summary judgment is well known in this Circuit and need not be repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–75 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.1984); Federal Rules of Civil Procedure 56(c).

Defendants assert that they are employed by Berrybrook as seasonal employees and as crew leaders. Defendants further assert that they are not farm labor contractors within the meaning of AWPA. Defendants argue that they are excluded under 29 U.S.C. § 1802(7) which excludes agricultural employers, agricultural associations or their employees from its definition of farm labor contractors. *See* 29 U.S.C. § 1802(7).

Plaintiffs argue that the exemption in § 1802(7) applies only to permanent, full-time employees of fixed-situs employers and not to migratory crewleaders. Section 1802(7) defines a farm labor contractor as "any person, other than an agricultural employer, an agricultural association or an employee of an agricultural employer or agricultural association, who, for any money or other valuable consideration paid or promised to be paid, performs *any* farm labor contracting activity." (emphasis added). Farm labor contracting activities are defined as "recruiting, soliciting, hiring, employing, furnishing, or transporting any

migrant or seasonal agricultural worker." 29 U.S.C. § 1802(6). Plaintiffs emphasize that the definition is in the disjunctive: a person need only engage in *one* of the specified activities to be considered a farm labor contractor.

Defendants Rodriguez and Garcia admit that they hire workers for Berrybrook (Rodriguez Dep. at 13; Garcia Dep. at 19–20). Further, Joseph Hassle, president of Berrybrook Farms, Inc., admits that defendants are authorized to hire workers (J. Hassle Dep. at 15); and it is beyond dispute that they are farm labor contractors licensed by the U.S. Department of Labor to recruit, solicit, furnish, and hire and employ migrant farmworkers. (Berrybrook Interrogatory Answer #11; Rodriguez Dep. at 7; Garcia Dep. at 6–7). *See* Plaintiffs' Brief in Support of Motion for Summary Judgment at 4 and attachments.

The Court is not persuaded by defendants' argument that they are merely "crewleaders" or forepersons, that they do not "employ" plaintiffs and are therefore excluded from the definition of farm labor contractor under § 1802(7). *See Marshall v. Buntings' Nurseries of Selbyville,* 459 F.Supp. 92, 97 (D.Md.1978) (discussing in detail the meaning of "hiring" under the Farm Labor Contractor Registration Act of 1963 ("FLCRA")). The Court notes that the definition of the term "farm labor contractor" remains essentially the same under AWPA as it was under FLCRA. In this regard, compare 7 U.S.C. § 2041(b) (1976) with 29 U.S.C. § 1802(6) (1982). Based on the information provided the Court, while there may be some dispute as to the precise duties and activities of the defendants with respect to "hiring" workers, there can be little doubt that defendants Garcia and Rodriguez can and do determine whom Berrybrook will employ in their crews and that their activities constitutes "hiring" within the meaning of § 1802(6). Moreover, the so-called "employee" exemption clearly does not apply to these defendants. *See e.g., Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 944 (9th Cir.1986) (discussing exemptions as applied to farmers and processors

who were permanently located, and indicating that the purpose of AWPA is to assist in the enforcement of the regulatory provisions against the traditional and more transient "crew leaders").

As plaintiffs point out, the fact that defendants are "employees" of Berrybrook in the sense that they provide services to Berrybrook and receive a paycheck as compensation for their services is irrelevant as far as § 1802(7) is concerned. Otherwise, every contractor would also be an employee and, as such, exempt from the Act. Exemption would then be coextensive with coverage and the Act would apply to one. The Court agrees with plaintiffs that Congress could not have intended such an absurd result. Accordingly, for all the reasons previously mentioned, the Court must deny defendants' motion for summary judgment.

*Plaintiffs' Motion for Summary Judgement*

█ Plaintiffs allege numerous violations under the AWPA and the MCPA. The Court has reviewed all the briefs, the pre-trial order, and the supporting documents submitted by the parties. While the Court has been somewhat helped by the submission of portions of depositions, the Court believes that the factual record needs to be developed more fully before it can make a determination on the merits of the claims before it. It is true, that much of this case involves the application of statutory definitions to alleged conduct proscribed by the relevant statutes. However, the parties dispute both the applicability of these statutory definitions to certain individual defendants as well as the meaning of the statutes themselves. Put differently, the questions of "law" for the Court to decide are dependent upon and inextricably entwined with questions of fact—many of which are hotly disputed by the parties. For example, both Berrybrook and defendants Rodriguez and Garcia deny that they recruited workers. Whether defendants posted an AWPA poster is also disputed. Similarly, a number of claims rise or fall upon the Court's determination of the question of whether or not defendants Rodriguez and Garcia "provided housing" within the meaning of 29 U.S.C. § 1821(c). Defendants dispute whether they "managed" or even "supervised" the housing at Berrybrook so as to be held liable for the health and safety violations and the corresponding failure to register with the United States Department of Labor pursuant to 29 U.S.C. § 1811(b).

Even where there appears, at first blush, to be no material facts in dispute, the defendants have raised possible "defenses" which the Court feels it would be more appropriate to rule upon after the factual record is more fully developed at trial. For example, it is uncontested that Berrybrook owns the migrant camps known as Murdock and Steinke. *See* Pre–Trial Order of September 9, 1987 ("Pre–Trial Order") at 4, ¶ A. Further, Berrybrook concedes that it failed to comply with state safety and health standards applicable to migrant housing (29 U.S.C. § 1823) between April 15, 1985 and May 17, 1985 at the Murdock and Steinke camps. *See* Defendant Berrybrook's Brief in Opposition to Motion for Summary Judgment at 8. It is also uncontested that Berrybrook's Murdock and Steinke migrant camps were not licensed for occupancy by the Michigan Department of Health between April 15, 1985 and May 17, 1985. Defendant Berrybrook's Answer at ¶ 36; Pre–Trial Order at 4, ¶ B. However, Berrybrook asserts that because workers arrived early, they chose to house them as opposed to "forcing" the workers to live in their vehicles or to seek other "less desirable housing." Defendant Berrybrook's Brief at 9. The Court is not now ruling whether this is or is not a possible "defense" to the admitted statutory violations, but simply notes that a fuller development of the underlying facts as established at trial is also relevant to the question of appropriate damages for each violation even after a violation is established. Because the issues of liability and damages will not be tried separately, the Court believes that it will profit from hearing all the relevant testimony before making its ruling even as to these health and safety AWPA claims.

Similarly, the question of whether defendants violated any working arrangement *without jurisdiction* with respect to housing in violation of 29 U.S.C. § 1822 in part depends on a fuller understanding of the underlying factual situation. The Court finds that at the present time it does not have the kind and quality of information it needs to make a proper determination. The Court concludes that plaintiffs' motion for summary judgment should be denied at the present time with respect to all of the AWPA claims.

In addition to its claims under AWPA, plaintiffs present numerous, and the Court believes somewhat novel, claims under the MCPA with respect to the underlying transaction(s) that relate(s) to the "renting" of migrant housing. Plaintiffs argue that the MCPA, M.C.L.A. § 445.901 *et seq.* prohibits unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce. *See* M.C.L.A. § 445.903. The MCPA contains a very broad definition of "trade or commerce."

> "Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution ·of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

M.C.L.A. § 445.902(d). Plaintiffs argue that this definition of trade or commerce includes landlord/tenant relationships. *See Smolen v. Dahlman Apartments, Ltd.,* 127 Mich.App. 108, 338 N.W.2d 892 (1983). Moreover, plaintiffs argue, owners of migrant camps are considered to be landlords, and migrants who ` live in the camps are considered to be tenants for purposes of Michigan landlord/tenant law even where no money actually changes hands. *Folgueras v. Hassle,* 331 F.Supp. 615, 624 (W.D. Mich.1971). The *Folgueras* court said:

> The migrants living in Joseph Hassle's labor camps are tenants within the meaning of Michigan law.
>
> It is commonly understood that a portion of the migrant's compensation for his work is his housing. The "Clearance Order" by which the grower secures his labor force states that housing is provided and that "rent is free." The crew leader then uses the rent-free aspect to muster up the necessary crew, and the "free rent" dwellings are one justification for the low wage paid migrant laborers. The migrant, therefore, pays the grower for the housing provided.

*Id.* It is clear that the rental relationship arises because agricultural workers in essence "pay" rent for the "free housing" when they exchange their labor for it. Plaintiffs conclude that when labor camp owners charge a monetary rental fee for housing, such owners fall within the clear language of M.C.L.A. § 445.902(d).

Defendant Berrybrook argues that it is *primarily* engaged in an agribusiness growing and harvesting crops for the food processing industry. (emphasis added). Berrybrook argues further that it is only *incidental* to the employment of workers in the agribusiness that Berrybrook makes such housing available to workers. Berrybrook submits that this is not the type of transaction which is encompassed within the meaning of "trade or commerce" as used in the MCPA. Stated differently, Berrybrook reads the clause "primarily for personal, family or household purposes" as intended to modify the words "conduct of a business," rather than the words "goods, property, or service."

Berrybrook's reading of the statute violates the principles of statutory construction which require that "words ... be applied to the subjects which seem most properly related by context and applicability." Sutherland, Statutory Construction (4th Ed., 1984 Rec), § 47.26 at 215–216 (*quoted* in *Noggles v. Battle Cr. Wrecking*), 153 Mich.App. 363, 369, 395 N.W.2d 322 (1986). Moreover, defendant's construction has been recently rejected by the Michigan Court of Appeals. *See Noggles v. Battle Cr. Wrecking, supra* (holding that "under either a traditional view of statutory interpretation or by an inquiry into plain legislative intent," § 445.902(d) should not be read to require a business to be primarily

one transacting business for personal, family, or household purposes).

*Noggles* noted that the legislative intent in enacting the Consumer Protection Act was to protect consumers in their purchase of goods which are primarily used for personal, family, or household purposes regardless of the type of business in which the "seller" is engaged and regardless of whether that business "conducts a substantial *minority* of its transactions with consumers for personal, family, or household purposes." *Id.* at 367–368 (emphasis in original). Moreover, *Noggles* is also instructive with respect to the question of whether the MCPA ought to be applied in the present context where there is simply an oral agreement and/or an otherwise "informal" exchange of labor for "free rent." *Noggles* involved the assertion by the plaintiff that he and the defendant wrecking company had entered into an apparently oral agreement whereby defendant agreed to fill in low spots on plaintiff's farmland in consideration for being allowed to dispose of defendant's debris on plaintiff's property. Plaintiff alleged that defendant specifically agreed to use "clean debris" and that defendant represented that he would not dump debris which contained any toxic or other hazardous materials onto his land. When the debris turned out to be "dirty," plaintiff called it a dirty deal and brought suit. The *Noggles* court found that plaintiff had stated a cause of action under a number of subsections of the MCPA by alleging that defendant had made representations that a "good" would be provided in a certain condition and had then failed to so provide the good.

█ The Court finds plaintiff's seemingly novel claims in this case analogous to those asserted by the plaintiff in *Noggles.* The *gravaman* of plaintiffs' complaint is that defendants made certain (oral) representations that property would be provided in a certain condition (that is, "free" living quarters as a part of an agreement to work for low wages) and then failed to provide the property (the living quarters) in conformance with the representation. It is clear that Berrybrook is a business which provides property which is used primarily for family or household purposes. Migrant workers and their extended families live in these "camps" during the growing season. They eat, sleep, and engage in various forms of social interaction in these camps: the "camps" are their temporary homes. The property is clearly used "primarily for personal family, or household purposes" within the meaning of the statute. Moreover, section 445.902(d) specifically includes by its own terms the solicitation and/or the offering for rent of real property which is used primarily for family or household purposes. When labor camp owners charge a monetary rental fee for housing, *a fortiori,* they fall within the clear language of section 445.902(d).

In holding that Michigan courts would recognize and maintain the present cause of action, the Court is counseled by other decisions which have construed the purposes and construction of the MCPA liberally. *See e.g., Mayhall v. A.H. Pond Co., Inc.,* 129 Mich.App. 178, 341 N.W.2d 268 (1983) (broadly construing "loss" under the MCPA to include not only monetary loss but also the frustration of a plaintiff's expectations which have in turn, been created by the defendant's actions); *Smolen v. Dahlmann Apartments, Ltd.,* 127 Mich. App. 108, 338 N.W.2d 892 (reversing trial court's granting of summary judgment for defendants and holding that a landlord who retains a part of a tenant's security deposit for cleaning violates the MCPA); *Mikos v. Chrysler Corp.,* 158 Mich.App. 781, 404 N.W.2d 783, (breach of an implied warranty fits definition of an unfair, unconscionable, or deceptive method actionable under the MCPA); *Temborius v. Slatkin,* 157 Mich. App. 587, 403 N.W.2d 821 ("innocent" as well as fraudulent misrepresentations actionable under MCPA).

█ However, the Court agrees with Berrybrook's argument that certain sections of the MCPA are not relevant here and should be "stricken" from the complaint. Section 445.903(1)(r) defines the following as an unfair, unconscionable, or deceptive method, act, or practice in the conduct of trade or commerce.

(r) Representing that a consumer will receive goods or services "free," "without charge," or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms or prerequisites to the use or retention of the goods or services advertised.

While at first blush the statutory language of this section appears to be applicable to the present factual context, the Court agrees with defendant that a closer analysis revels that it should not be applied where the "transaction" involved is really that of landlord-tenant, rather than that of seller-buyer. Stated differently, Berrybrook argues that section 445.903(1)(r) pertains only to representations made to a consumer regarding *goods or services* which [are provided] "free," or "without charge" and is therefore inapplicable in that it does not prohibit anything with respect to *real property*. Berrybrook argues that because the legislature omitted any reference to real property it did so with a purpose since the definition of "trade or commerce" explicitly includes a business providing goods, *property* or services. Berrybrook asserts that the legislature obviously recognized the difference between "goods and services" and property. Berrybrook concludes that section 445.903(1)(r) simply does not apply to the present situation which, defendant argues, involves, "at best," a landlord-tenant transaction. Moreover, the Court notes other sections of 445.903 specifically use the words "transaction" and/or "property" indicating that such sections are to be applied to the transaction of goods, services, *and* property. *Cf. e.g., Smolen,* 127 Mich.App. at 118, 338 N.W.2d 892 (applying statutory language of "transaction" and "property" found in M.C.L.A. section 445.903(1)(u) to landlord-tenant context); *see also* the specific statutory language of M.C.L.A. § 445.903(1)(z) ("[c]harging the consumer a price which is grossly in excess of the price at which similar property or services are sold.") While the Court is not completely persuaded that the Michigan legislature intended such a fine distinction, the Court

does believe that the MCPA is applicable to the present factual situation only insofar as its language can be reasonably read to embrace a landlord-tenant [rental] "transaction."

Similarly, defendant argues that by its very terms section 445.903(1)(y) applies only to a seller and is not applicable in the landlord-tenant situation. Section 445.903(1)(y) provides that "[g]ross discrepancies between the oral representation of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits" are unfair practices. Again, despite the surface appeal of the statutory language to plaintiffs' situation, the Court finds defendant's argument persuasive.

The Court will consider defendant Berrybrook's objections to plaintiffs' motion for summary judgment as a motion to dismiss pursuant to 12(b)(6) for failure to state a claim. Accordingly, the Court will enter an order dismissing plaintiff's claims under M.C.L.A. § 445.903(1)(z) and M.C.L.A. § 445.903(1)(y). To recapitulate, Berrybrook concedes that plaintiffs' remaining claims under the MCPA set forth in plaintiffs' motion for summary judgment are applicable in the landlord-tenant context, but argues that the Court should not find the MCPA applicable to Berrybrook's agribusiness. Put differently, Berrybrook argues that it should not be seen as a landlord, or, at least, not primarily as a landlord, but rather only "incidentally" as a landlord—a status which arises as a result of the employment relationship it maintains with its workers. The Court, of course, based in part on *Folgueras,* has found that the MCPA is applicable here: that migrants living in such labor camps are "tenants" within the meaning of Michigan law. Accordingly, the Court will retain plaintiffs' claims under M.C.L.A. §§ 445.903(1)(s), (bb) and (cc) but will deny plaintiffs' motion for summary judgment as to those claims for the same reasons that it denied plaintiffs' motion as to the AWPA claims: there are material issues of fact in dispute. In addition, the Court will retain

those remaining MCPA claims which were set forth in plaintiffs' complaint but which were not included in plaintiffs' summary judgment motion.

In sum, plaintiffs' motion for class certification is granted; plaintiffs' motion for summary judgment is denied; and defendants' motion for summary judgment is denied. In addition, the Court will enter an order striking subparagraphs *c* and *f* of paragraph 138 from plaintiffs' complaint for failure to state a claim upon which relief can be granted.

### ORDER

In accordance with the opinion entered September 23, 1987;

IT IS HEREBY ORDERED that plaintiffs' motion for class certification is GRANTED;

IT IS FURTHER ORDERED that the following class is hereby CERTIFIED pursuant to Rule 23(b)(2):

> All agricultural workers who had rental fees deducted from their paychecks by Berrybrook Farms during the 1985 agricultural season.
>
> A subclass consisting of all workers housed at unlicensed labor camps at Berrybrook Farms during the 1985 agricultural season.
>
> A second subclass consisting of all agricultural laborers for Berrybrook Farms who did not receive accurate disclosures of the terms and conditions of employment and housing at Berrybrook Farms for the agricultural season.
>
> A third subclass consisting of all workers housed at Berrybrook in 1985 by farm labor contractors who were not authorized by the U.S. Department of Labor to house migrant workers.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is DENIED;

IT IS FURTHER ORDERED that defendants Rodriguez and Garcia's motion for summary judgment is DENIED;

IT IS FURTHER ORDERED that subparagraphs "c" and "f" of paragraph 138 of plaintiffs' complaint are stricken for fail-

ure to state a claim upon which relief can be granted.