Rogelio ROMAN; Maria Roman; Ruben Roman; Robert Roman; David Peralez; Rosalinda Peralez; Ester Paredes; Raquel Roman, a minor, by and through her next friend, Maria Roman; Maria Cruz; Asuncion Aparicio; Guadencio Aparicio; Jesus Mojica; Maria I. Espinoza; and Ceferino Borja, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Gerald KORSON, individually and d/b/a Jerry Korson Farms; Doroteo Carrizales; Edward Madigan, in his official capacity as Secretary, United States Department of Agriculture; Laverne Ausman, in his official capacity as Administrator, Farmers Home Administration; Calvin Lutz, in his official capacity as State Director, Farmers Home Administration; Harry Brumer, in his official capacity as District Director, Farmers Home Administration; United States Department of Agriculture and Farmers Home Administration, both agencies of the United States, Defendants.

No. 1:91:CV:274.

United States District Court, W.D. Michigan.

Nov. 30, 1993.

Deborah L. McNabb, Gary N. Gershon, Michigan Migrant Legal Assistance Program, Inc., Grand Rapids, MI, Michael S. Bogren, Elizabeth A. Bennett, Plunkett & Cooney, PC, Kalamazoo, MI, Roger C. Rosenthal, Migrant Legal Action Program, Washington, DC, Lee Philip Reno, Reno, Cavanaugh & Hornig, Washington, MI, for plaintiffs.

Richard M. Van Orden, Richard M. Van Orden, PC, Grand Rapids, MI, James Robert Williams, James R. Williams Law Offices, Suttons Bay, MI, for Korson and Carrizales.

Ruth Ann Ernst, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, MI, Stuart M. Gerson, U.S. Dept. of Justice, Civil Div., Federal Programs Branch, Paul W. Bridenhagen, Felix Baxter, U.S. Dept. of Justice, Civil Div., Washington, DC, for Madigan, Ausman, Lutz, Brumer, U.S. Dept. of Agriculture and Farmer Home Admin.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on plaintiffs' motion for certification of classes, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Also, plaintiffs seek the Court to order notice of the ability to opt-in to a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

This is a nationwide class action brought by migrant farm workers allegedly wrongfully charged rent while residing in farmer-owned housing constructed with funds provided pursuant to Section 514 of Title V of the Housing Act of 1949. 42 U.S.C. §§ 1471–1490r (FmHA § 514).

Plaintiffs assert that the statute and regulations state that borrowers under the program who intend to charge rent or utilities must sign loan agreements, providing for loans at 1% interest, which require prior FmHA approval of rent and utility charges, notice to current tenants, and an opportunity to comment on future rent or utility increases. The loan agreement, FmHA Instruction 1944–D, according to plaintiffs, may be waived by the state director of FmHA when the borrower receives no rental income from the tenants and when the borrower is a farmer or farm partnership or corporation. Plaintiffs contend that a significant number of these loan agreement waivers have been granted to farmer-borrowers nationwide.

Plaintiffs allege that many borrowers have been charging rent and utilities though they had no loan agreements and had no prior approval of such charges from the Farmers Home Administration. These charges, plaintiffs assert, were in violation of FmHA § 514. Further, plaintiffs contend that the FmHA was well aware of the violations and the problem because of audits published in 1986

and 1990 by the United States Department of Agriculture and Office of the Inspector General (OIG).

Plaintiffs contend that the Farmers Home Administration (FmHA) failed to remedy the violations by borrowers. In addition, they contend that the FmHA failed to conduct inspections of the § 514 projects as mandated by FmHA regulations, 7 C.F.R. § 1930. The "federal defendants" include the U.S. Department of Agriculture; the Farmers Home Administration (FmHA); and four officials of these agencies.

Plaintiffs also have brought suit against one particular farmer, Gerald Korson, individually and doing business as Jerry Korson Farms, and also against Doroteo Carrizales, allegedly a farm labor contractor of Mr. Korson's in 1989, who is a resident of Texas. Plaintiffs claim that Mr. Korson received FmHA § 514 loans totalling at least $184,500, and that Mr. Korson charged migrant farm workers as much as $430 per month for rent and utilities, even though he signed no loan agreement and though such charges were not preapproved by the FmHA.

Plaintiffs further claim that Mr. Korson's charges were well above market rates for rent since 1986, and that he violated numerous state and federal statutes concerning employment law and landlord tenant law.

Finally, plaintiffs claim that Mr. Korson unlawfully collected rent and utilities for Section 514 housing; charged flat utility fees far exceeding actual costs; withheld security deposits and failed to provide an inventory checklist on move-in or move-out with respect to such security deposits; paid less than minimum wage to some workers; violated housing health and safety standards; and failed to provide adequate disclosures of terms and conditions of employment and housing and made misrepresentations of facts to prospective workers.

As a remedy, plaintiffs and others similarly situated seek declaratory and injunctive relief for violations of their rights under Title V of the Housing Act; as well as violations of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559; the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801–1872; the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219; and the due process clause in the fifth amendment of the United States Constitution. They also bring pendent claims under the Michigan Security Deposit Act, Mich.Comp.Laws Ann. §§ 554.601–554.616; the Michigan Consumer Protection Act, Mich.Comp.Laws Ann. § 445.901 et seq.; Mich.Comp.Laws Ann. § 408.581, concerning employing persons to work at a distance from their home localities; and breach of contract. Plaintiffs also seek damages and statutory and liquidated damages when applicable.

The second amended complaint identifies an overall nationwide class of plaintiffs, plus five subclasses. The subclasses concern defendant Korson and not the federal defendants.

Plaintiffs' motion for certification has worded the proposed class descriptions a little differently from the description in their complaint, except for the nationwide class. The classes specified in the motion appear to be substantially the same as those identified in the complaint, except that some are more clearly stated in the motion. Consequently, the Court will consider certification of the following classes as specified in their motion:

I. The Nationwide § 514 Class: All agricultural workers in the United States who reside, have resided or will reside in FmHA § 514 projects operating without loan agreements who have been or will be charged unauthorized rent and/or utilities.

IA. Korson § 514 Subclass: All agricultural workers since 1986 who have been housed by defendant Korson in FmHA § 514 housing and who have paid rent and/or utilities.

II. Korson Security Deposit Class: All agricultural workers who paid defendant Korson a security deposit in connection with their tenancy in Korson's housing, and who were not given an inventory checklist upon move-in and move-out, and/or who received neither a refund of their security deposit nor a list of damages for which the security deposit was retained.

III. Korson Flat Utility Fee Class: All agricultural workers who were housed by Korson since 1986, and who will be housed by him in the future, who were or will by charged flat utility fees grossly in excess of and bearing no relationship to the actual costs.

IV. Korson AWPA Class: All agricultural workers who have worked for Korson since 1986, or who will work for him in the future, who were not given disclosures required by the AWPA, or whose AWPA rights were violated (including minimum wage and housing health and safety violations).

IVA. Korson MCL Subclass (regarding employing persons to work at a distance from their homes): All agricultural workers who have worked for Korson since 1986, or who will work for him in the future, who were not given written disclosures of the terms and conditions of employment.

Except for subclass IA, in regards to the Korson classes, the housing referred to in the descriptions is not limited to section 514 housing; for example, "housing" also includes the pole barn. In addition to these classes, plaintiffs request that this Court issue an order for notice of ability to opt-in to a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

**Standards for Class Certification**

Plaintiffs seek certification of the various classes pursuant solely to Rule 23(b)(2) of the Federal Rules of Civil Procedure. This statute states as follows:

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 \* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Rule 23(a) states as follows:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the above requirements, as this Court has previously held, a class must be precisely defined in order to meet the Rule 23(a) test. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1012 (W.D.Mich.1987) (citing *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976)). Also, this Court cited the Supreme Court in noting that a class " 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Id.* (quoting *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). There is no definite standard as to what size class satisfies the numerosity requirement. *Haywood v. Barnes,* 109 F.R.D. 568, 576 (E.D.N.C.1986). But as few as 18 to 25 members have been certified in past cases. *Id.* This Court has previously noted that the modern trend is to require a minimum of between 21 and 40 members. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1013 (W.D.Mich.1987) (citing Moore, *Moore's Federal Practice,* ¶ 23.05[1], at 23–151; 13–155 (2d Ed.1985)).

 The inability to determine precise numbers does not bar class certification, and such problems in identifying all class members is actually a situation that makes class certification more desirable, because joinder may be impractical, considering expediency and the inconvenience of trying individual lawsuits. *Haywood,* 109 F.R.D. at 576–77. Impractical means extremely inconvenient or difficult to join members of the class. *Rodriguez,* 672 F.Supp. at 1013 (citing Wright & Miller, *Federal Practice and Procedure,* § 1672, at 573). Factors such as geographical dispersion, lack of sophistication, and re-

luctance to sue individually may also be considered in determining impracticality. *Id.* at 1014. In a case, such as this, where the proposed class largely consists of migrant workers, these three factors are all implicated, and the Court would view classes with between 21 and 40 members as likely being certifiable as to the numerosity requirement.

"The requirement of commonality is aimed at determining whether there is a need for combined treatment and a benefit to be derived therefrom." *Id.* at 577. The common question required is one which arises from a "common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *Id.* "[A] class action will not be defeated solely because there are some factual variations among the members' grievances." *Id.* (citing *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981)).

The "typicality" requirement is that "plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." *Id.* at 578. This may be satisfied even if there are factual distinctions between the claims of named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative. *Id.*

Finally, the inquiry into the named plaintiffs' adequacy of representation focuses on two factors: "(a) the qualifications, experience and conduct of plaintiffs' counsel and (b) the interest and involvement of the named plaintiffs in the litigation." *Id.*

Rule 23(b)(2) sets forth two basic requirements for the maintenance of class actions in addition to the requirements of Rule 23(a). "First, the party opposing the class must have acted or refused to act or failed to perform a legal duty, on grounds generally applicable to all class members." H. Newberg & A. Conte, *Newberg on Class Actions,* § 4.11, at 4–37 (3d Ed.1992).

Secondly, "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, [must be] appropriate." *Id.* (citing *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 102 (1966)). Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 102 (1966). Where significant injunctive relief is also sought and is predominant, a class that also seeks damages will not be disqualified from certification under Rule 23(b)(2). *Newberg, supra,* § 4.11, at 4–43 (3d Ed.1992).

### DISCUSSION

This Court has previously held, and the parties do not dispute, that when certification of multiple classes and subclasses is sought, each of these classes and subclasses must independently satisfy the class action criteria. *Rodriguez,* 672 F.Supp. at 1013. The Court will consider the certification of each class separately.

### Nationwide § 514 Class

Plaintiffs seek various types of equitable and declaratory relief against the federal government defendants for allegedly violating the Administrative Procedure Act, the Housing Act, and the due process clause contained in the fifth amendment of the United States Constitution as it relates to the deprivation of property. These allegations are encompassed by plaintiffs' first, second, third, and fourth causes of action as contained in their second amended complaint. The nationwide class is proposed as follows:

> All agricultural workers in the United States who reside, have resided or will reside in FmHA § 514 projects operating without loan agreements who have been or will be charged unauthorized rent and/or utilities.

Defendants point out that "agricultural workers" may be an incorrect designation of the workers intended to be included in this class. They suggest that, pursuant to section 514, the description "domestic farm laborers" is more appropriate. However, the Court perceives no significant difference.

Defendants have challenged this class as being overbroad and imprecise. It seems to this Court that precision refers to whether it can be accurately determined whether a particular individual belongs to the class. While the class does not have the same limitations as to time or employer that were present in *Rodriguez,* certainly it is easy to find out whether someone is a member of the class. The class is not overbroad as the description as written includes only individuals who were affected and protected by section 514 and the related statutes and regulations.

Defendants complain that the numerosity of this class has not been shown by competent evidence, claiming that plaintiffs have merely made an "assumption" that there must be hundreds or thousands who were unlawfully charged rent, and who did not receive the benefit of adequate enforcement efforts by the federal defendants. However, the Court would characterize plaintiffs' calculation as being a permissible inference given the large number of loans and units possessed by section 514 borrowers and the OIG reports in 1986 and 1990 indicating the lack of enforcement being done with respect to the section. Further, more than eighty known borrowers in at least nineteen states have section 514 housing without loan agreements. The numerosity requirement is sufficiently satisfied with respect to the nationwide class.

Concerning whether the named plaintiffs' situations are sufficiently typical to warrant class treatment, several plaintiffs' allege that they have been wrongfully charged rents and utilities on the section 514 housing. Defendants complain that plaintiffs' experience is limited to housing provided by defendant Korson, apparently suggesting that they had not shown that their experiences were typical of individuals in section 514 housing provided by other farmers in other states. Furthermore, defendants argue that plaintiffs received payments from the Michigan Department of Social Services (MDSS) to cover part of the rents paid, indicating that they may not be typical of workers in other states that had public assistance for rental expenses.

The OIG reports allegedly indicated a lack of enforcement regarding section 514 generally, not just in Michigan. No evidence has been provided to show that enforcement efforts by federal defendants were different in Michigan as compared to other states.

As to the fact that MDSS paid for part of the rent, the Court is unpersuaded that this defeats named plaintiffs' typicality. It is clear that migrant workers, who would dominate or encompass the plaintiff class, typically live below the poverty line and are often qualified for state assistance, such as that provided to the named plaintiffs. Furthermore, allegedly the payments from MDSS did not fully cover the rents paid, meaning that named plaintiffs endured having to pay at least some rent, making them sufficiently typical of the class they seek to represent.

Therefore, there is no reason to believe that the named plaintiffs had an atypical experience concerning being charged rents on section 514 housing, or concerning the responsiveness of federal defendants to their alleged mistreatment. It appears that whatever differences there may be in other unnamed plaintiffs' experiences, the similarities as relevant to issues concerning the federal defendants would appear to predominate.

Similarly, the legal and factual issues are sufficiently common to all proposed class members to warrant class treatment. The class is defined to include those affected by the enforcement actions and inaction of the federal defendants concerning section 514 housing. While there may be some legal issues, including legal defenses, that may be present for some members of the class and not others, for this class the commonality of occupying section 514 housing and being entitled to reasonable enforcement efforts on the part of federal defendants is clear and sufficient for certification.

Concerning whether the representation by named plaintiffs would be adequate, defendants make no argument concerning the abilities and probable level of effort of plaintiffs' attorneys, the Michigan Migrant Legal Assistance Project, as assisted by Roger Rosenthal of the Migrant Legal Action Program in Washington, DC, as well as other lawyers specializing in housing law. These attorneys have extensive experience concerning mi-

grant worker issues or housing law issues and can be expected to give more than adequate representation to the interests of the class as a whole. As for the plaintiffs themselves, there is no reason to believe that they will not adequately represent the interests of the class, given their personal interest and involvement in the litigation.

Rule 23(b)(2) requirements are clearly met with respect to this nationwide class. Plaintiffs contend that the federal defendants failed to fulfill their legal responsibilities with respect to enforcing the statutes and regulations related to section 514 housing. They seek to force the federal defendants to actively enforce these statutes and regulations through an injunction.

The final argument by the federal defendants is that class action is unnecessary in order for the plaintiff class to secure the remedies sought. First, they aver to the fact that the waiver provision that apparently caused borrowers to be able to secure section 514 housing loans without entering into loan agreements has been repealed. Also, they note that as a federal agency, any declarations or injunctions from this Court with respect to the named plaintiffs would apply also to all other similarly situated persons.

This Court is not convinced that certifying the class would serve no useful benefit. First, the retroactivity of the repeal of the waiver provision is not necessarily settled. Secondly, the federal defendants are alleged to have not sufficiently enforced the statutes and regulations on a nationwide basis. If plaintiffs prevail in this case on the claims against this class, then it would seem appropriate or probable that injunctions issued to remedy the claims of the named plaintiffs would be equally applicable for remedying the claims of similarly situated unnamed plaintiffs.

Clearly, certification is proper under Rule 23(b)(2). Consequently, this Court will certify the nationwide class.

### Korson Classes

In addition to seeking a remedy against the federal defendants, plaintiffs seek to certify various classes with respect to claims against defendant Korson and, on one claim, defendant Carrizales. These classes, as specified above, are labeled the Korson § 514 class, Security Deposit class, Flat Utility Fee class, AWPA class, and MCL subclass. These classes are considered separately.

The proposed classes are precisely defined in that it is not difficult to determine whether a particular individual qualifies as a member. One exception is the Flat Utility Fee Class. Also, as with the nationwide class, the named plaintiffs appear to be sufficiently typical of the claimants included in each of the Korson classes. Commonality of the issues of law and fact appear to be sufficiently shown for all but the AWPA Class as formulated. Also, Korson is alleged to have acted toward each of the proposed classes in a manner generally applicable to each the classes. Further, it appears that plaintiffs and their attorneys would adequately represent the interests of the unnamed members of the classes.

Two requirements that are needed for certification that are less clearly met by the five proposed Korson classes and subclasses are numerosity and whether equitable, injunctive relief is an appropriate and important part of the remedies sought.

### Korson Section 514 Class

■ Plaintiffs seek to recover the amounts of rent and/or utilities wrongfully collected from them by Korson when they lived in section 514 housing. Further, they seek to enjoin Korson from charging rents or utilities without executing loan agreements with the FmHA. Finally, they seek a declaration by this Court that Korson's collection of rents and/or utilities was in violation of his contract with the FmHA.

Plaintiffs have failed to show that a sufficient number of members exist in this class to meet the requirement of numerosity. Korson notes that he rented only the section 514 structure built in 1986, that it had only four living units and that it was not rented after 1989. Korson claims, using an affidavit from the bookkeeper, that only four plaintiffs and only five non-plaintiffs were ever charged rent for living in the structure. The Court is unaware of contrary numbers being provided by plaintiffs, and even if twice as many were charged rent as Korson claims,

the numerosity would not be met and certification would not be proper.

### Security Deposit Class

■ Plaintiffs seek to recover the full amount of security deposits paid to Korson by each plaintiff. Further, they seek a declaration that Korson violated the Michigan Security Deposit Act and Consumer Protection Act. Finally, they seek to enjoin Korson from violating these Acts in the future.

Korson suggests that fewer than twenty members beyond plaintiffs could belong to this class. However, the Court finds Korson's argument to be confusing and unpersuasive. Korson indicates that only the nine units of the pole barn in 1986 or 1988 plus the four units in the section 514 structure were susceptible to a security deposit charge from 1986 through 1989. They note that the named plaintiffs occupied several of these units at various times. Also, apparently there was only one security deposit per unit. However, the records included in plaintiffs' reply brief appear to indicate that the security deposits were, in fact, charged per person and not per unit. Also, the records indicate that at least 29 different individuals were charged security deposits. Also, the Court is uncertain about whether a single unit if occupied at different times by different people would only have one security deposit per year, as implied by Korson.

More notably, Korson's bookkeeper indicated that no security deposits had been taken since 1989. However, in 1990, Korson had "Housing Rules" that provided for a $2.00/day "bonus" at the end of the harvest season if there was no significant damage to the housing. To this Court, this appears to be a clever way to disguise what is, in reality, a security deposit. Korson had 17 housing units available in 1990, therefore, it seems clear that, in 1990, many people were charged these "bonuses"/security deposits. The Court is satisfied as to the numerosity requirement for this class.

The remaining issue is whether injunctive relief may be properly sought by members of this class, thus fulfilling the requirement of Rule 23(b)(2). The above finding that the "bonus" of $2.00 per day for no damage to housing constituted a security deposit answers this question.

Korson is correct in stating that the injunction sought is possible only if there is some showing of ongoing violations or a reasonable likelihood that violations will occur in the future. *See Kohn v. Mucia,* 776 F.Supp. 348, 355 (N.D.Ill.1991). This requirement, though important, presents no barrier here. It is clear that many migrant workers return to the same farms in future years. Plaintiffs suggest that 24% of migrant workers return to the same farms. Also, this Court has no indication that the "bonus" system is not still operating in a manner as to inflict a security deposit on individuals without referring to it as such.

The Court is satisfied that plaintiffs are intent on stopping Korson's practices concerning security deposits and that this injunctive relief predominates the damages relief requested so that certification is proper under Rule 23(b)(2). The Court notes at this point that the damages relief requested is itself equitable in part, as it seeks restitution of monies wrongfully withheld.

Consequently, the Korson Security Deposit Class is certified under Rule 23(b)(2).

### Flat Utility Fee Class

■ Plaintiffs claim that Korson charged some people flat utility fees that were far in excess of actual costs or meter readings, in alleged violation of Michigan Consumer Protection Act, Mich.Comp.Laws § 445.903(1)(z). According to the second amended complaint, they seek only a declaratory judgment that this practice violated the Act and an injunction against future violations. It is unclear why reimbursement is not sought, however, this may be because reimbursement for all utility fees charged is requested in the section 514 cause of action.

Numerosity is a major barrier to certifying this class. According to plaintiffs' reply brief, they have identified "at least three class members with this claim (including at least one named plaintiff)." Plaintiffs plan to use the two remaining depositions, those of Korson and his bookkeeper, to obtain explanations of the allegedly sparse and imprecise records concerning utility fees charged.

Plaintiffs request preliminary certification of this class pending completion of these depositions. The Court finds that with only three members thus far identified, that a better resolution is to deny the certification, subject to reconsideration should plaintiffs be able to later show that the class has at least twenty members.

The Court also notes that this class was imprecisely worded in that it included the vague requirement that the fees charged were "grossly in excess … of costs." This issue, and wording that might cure the defect, need not be considered because the numerosity problem precludes certification anyway.

### AWPA Class

■ The fifth cause of action in plaintiffs' second amended complaint enumerates nine violations by Korson of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1821–1823. Some of these violations are apparently also charged against defendant Carrizales. Korson complains that the class refers only to violations of the AWPA rather than enumerating the nine charged violations. The Court is not troubled by the omissions as it was only a shorthand way of referring to the violations alleged in the complaint. Nevertheless, certification of this class as a whole is not possible for a number of reasons.

Concerning numerosity, plaintiffs contend that at least 298 members exist for this class. They state that although not all the alleged violations apply to all 298 members, for at least seven of the nine violations listed in the complaint, there are no fewer than 39 members and as many as 298 violations.

The other two violations involved very few members. Concerning the alleged violation of misrepresenting the terms of employment and housing, plaintiffs have identified only three members thus far. Concerning not being paid wages when due, plaintiffs have identified only two members.

Plaintiffs seek to treat all farmworkers who suffered AWPA violations as one class, asserting that they constitute a common claim arising out of a single statute.

Unlike the other Korson classes, there does not appear to be sufficient commonality of law and fact to warrant certifying a single class for AWPA violations. Although it is a single statute, some class members contend that Korson failed to provide written disclosures of the terms and conditions of housing, while other proposed class members contend that Korson failed to keep adequate records concerning employees paid on a piece rate basis from 1986 to 1989. Some claims are that Korson provided labor housing that did not comply with health and safety laws as related to the pole barn. The legal and factual issues involved in proving these claims are not common across the class in any way. Similarly, it cannot be said that Korson acted toward the total class in a manner generally applicable to the class as required by Rule 23(b)(2).

The Court finds, however, that the individual subgroups identified can stand on their own and satisfy the commonality requirement and the Rule 23(b)(2) requirement. The nine subgroups relate to Paragraph 207(a) through (i) of the second amended complaint.

The problem of numerosity again arises regarding two of the classes: the misrepresentation subclass (subsection (f) of paragraph 207) and failing to pay wages when due subclass (subsection (h) of paragraph 207). Neither of these classes at present has been shown to even have five members, and certification is improper due to the lack of numerosity.

As for the remaining seven subclasses regarding alleged AWPA violations, the possible barrier to certification is the remedy sought. Plaintiffs seek statutory and liquidated damages of up to $500 per violation. In addition, they seek to enjoin Korson from future violations of the cited provisions of the AWPA.

As noted above, injunctive relief must be shown to be appropriate to serve as a basis for class certification under Rule 23(b)(2). Korson asserts that plaintiffs have not alleged that he is continuing to violate the AWPA or that he is likely to do so in the future. However, Korson provides no evidence to indicate that he has discontinued

the conduct or omissions that plaintiffs contend violate the AWPA.

This Court is unimpressed with the cases cited by plaintiffs to indicate that statutory damages are appropriate for class action because the cases all concerned certification under Rule 23(b)(3), which has no injunction requirement. The Court is also unimpressed with plaintiffs' apparent suggestion that requesting a declaration that Korson violated the statute satisfies Rule 23(b)(2). The declaratory judgment sought must correspond to injunctive relief, or serve as the basis for future injunctive relief.

Nevertheless, an injunction to discontinue violations seems to likely to be applicable in this situation if they are proven to be violations. Again, it is likely that many migrant workers who are part of these seven classes will return in the future, thus giving them standing to seek the injunction. Also, the plaintiffs' clear predominant intent is to stop the violations, not to collect damages.

One other issue brought up by Korson is whether the class appropriately includes future workers. The inclusion of future workers in these classes is appropriate as explained in a case cited by Korson as well as plaintiffs. *Dixon v. Bowen*, 673 F.Supp. 123, 127 (S.D.N.Y.1987). Inclusion of future class members "protects [those] who would otherwise have to wait for [a violation] to occur before they seek a post-hoc remedy. Such unnecessary harm and repetitive litigation is precisely what the class action device is designed to prevent. Where the challenged 'practice is alleged to be continuing ... the class properly includes future as well as past applicants who will be affected by it.' " *Id.* at 127 (quoting *Kohn v. Royall Koegel & Wells*, 59 F.R.D. 515, 520 (S.D.N.Y.1973)).

Class actions are often defined to protect individuals who will fact the same injury that threatened those class members who have already been injured at the time of certification. *Id.* (citing *Henry v. Gross*, 803 F.2d 757, 762 (2nd Cir.1986)). Here, contrary to Korson's contentions, the evidence provided to the Court suggests that future violations may occur that would create future class members, therefore, inclusion of these class members is warranted.

The seven subclasses of AWPA directed at the seven alleged violations enumerated in paragraph 207, in subsections (a), (b), (c), (d), (e), (g), and (i), are certifiable under Rule 23(b)(2).

### M.C.L. § 408.581 Subclass

This class is a proposed subclass of the AWPA Class. It is based upon alleged violations of the Michigan statute concerning requirements on employing persons to work at a distance from their home localities. Defendants oppose certification of this class on the grounds that the statute provides only for monetary damages remedies and that the scope of the statute's coverage and the nature of liability preclude its application in this case.

Plaintiffs note that the substance of the state law claim is addressed in the AWPA class claims, including damages. Therefore, plaintiffs acceded to defendants' opposition to certifying this class. Therefore, the Court need not consider the merits of the arguments in support of certifying this class.

### FLSA Opt–In

The Fair Labor Standards Act, as plaintiffs recognize, does not allow for classes to be certified under Rule 23(b)(2) because of its clause that states: "No employee shall be a party plaintiff to [a class] action unless he (sic) gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(a). Also, the employees to "opt-in" must be "similarly situated" to those in the class. *Id.*

Plaintiffs request this Court to order notice of the ability to opt-in under section 16(b) of FLSA, retroactive three years from the date of the Court's order. The three year designation is apparently intended to deal with FLSA's statute of limitations provision, which is two years unless the violation was willful, in which case a three year period applies.

Any employee of Korson's who had a cause of action accrue more than three years ago obviously could not sustain a claim. Therefore, an order to allow such employees to opt-in would be useless. Korson claims that

because the named members of this FLSA class worked during 1989 and 1990, the statute of limitations bars any similarly situated employee who is not already named in the case. Korson claims that workers after that time that may have FLSA claims could not be similarly situated to any named plaintiffs because the period when they allegedly were unlawfully treated was during a later harvest season.

Employees whose causes of action accrued at about the time and place and manner of the currently included plaintiffs would be similarly situated and could have opted in to this claim. *See Aguirre v. Bustos*, 89 F.R.D. 645 (D.N.M.1981) and *Leyva v. Buley*, 125 F.R.D. 512 (E.D.Wash.1989). However, the time of the alleged violations to the named plaintiffs was during the 1989 and 1990 harvesting seasons, so any similarly situated FLSA claims not already brought from that period would now be over three years old and barred by FLSA's statute of limitations.

█ Plaintiffs suggest that defendants' objection to the notice of ability to opt-in goes more directly to issues of summary judgment and not group membership. The Court agrees. However, FLSA does not require a Court to order notice be given to potential plaintiffs of the ability to opt-in. *Pirrone v. North Hotel Associates*, 108 F.R.D. 78 (E.D.Penn.1985). While the Court will not prevent anyone from providing a notice of ability to opt-in, the Court will not waste its own time seeking to include employees who, apparently, would lose on summary judgment.

## CONCLUSION

For the foregoing reasons, the following classes proposed by plaintiffs are certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

I. The Nationwide Section 514 Class

II. The Korson Security Deposit Class

IV. The Seven Korson AWPA Classes as correspond to paragraph 207 of the second amended complaint, in subsections (a), (b), (c), (d), (e), (g), and (i).

The other proposed subclasses are not certified, at least under Rule 23(b)(2). As for the FLSA notice of ability to opt-in to a collective action, the Court will not order such notice.

## ORDER

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that plaintiffs' motion for certification of classes pursuant to Rule 23(b)(2) is **GRANTED in part** and **DENIED in part;**

**IT IS FURTHER ORDERED** that the following classes are hereby **CERTIFIED** pursuant to Rule 23(b)(2):

Nationwide § 514 Class:

All agricultural workers in the United States who reside, have resided or will reside in FmHA § 514 housing projects operating without loan agreements who have been or will be charged unauthorized rent and/or utilities.

Korson Security Deposit Class:

All agricultural workers who paid defendant Korson a security deposit in connection · with their tenancy in Korson's housing, and who were not given an inventory checklist upon move-in and move-out, and/or who received neither a refund for their security deposit nor a list of damages for which the security deposit was retained.

Korson AWPA (29 U.S.C. § 1821–23) Classes:

All agricultural workers who have worked for Korson since 1986, or who will work for him in the future, whose rights under the AWPA were allegedly violated by Korson in the following ways:

a. failing to provide written disclosure of the terms and conditions of employment at the time of recruitment. 29 U.S.C. § 1821(a);

b. failing to post in a conspicuous place a poster setting forth the protections provided by the AWPA. 29 U.S.C. § 1821(b);

c. failing to post in a conspicuous place a poster and failing to give those who occupied Korson housing a statement

of the terms and conditions of the housing which they occupied. 29 U.S.C. § 1821(c);

d. failing to make, keep and preserve records regarding the number of hours worked by these employees. 29 U.S.C. § 1821(d)(1);

e. failing to provide each worker with an itemized written statement for each pay period containing the information required by 29 U.S.C. § 1821(d)(1) and 29 U.S.C. § 1821(d)(2);

g. failing to provide the information required by 29 U.S.C. § 1821(a)-(c) in written form, and in Spanish for those workers who were not fluent or literate in English. 29 U.S.C. § 1821(g); and

i. failing to comply with federal and state safety health standards applicable to defendant's migrant labor housing, 29 U.S.C. § 1823(a).

**IT IS FURTHER ORDERED** that with regard to the remaining classes for which certification is requested under Rule 23(b)(2), plaintiffs' motion is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiffs' request for this Court to order notice of ability to opt-in under the Fair Labor Standards Act, 29 U.S.C. § 216(b), is **DENIED.**