David E. RODGER, Jerry N. Phillips, Francis W. Pelone and Phyllis M. Pulley, Plaintiffs,

v.

ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.

No. 93–664–CIV–5–D.

United States District Court, E.D. North Carolina, Raleigh Division.

Feb. 23, 1995.

534

Thomas A. Farr, James A. Roberts, III, and James C. Dever, III, Maupin, Taylor, Ellis & Adams, Raleigh, NC, for plaintiffs.

Charles A. Edwards, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, for defendant.

## ORDER CERTIFYING CLASS

DUPREE, District Judge.

Plaintiffs filed this action against defendant Electronic Data Systems Corporation (EDS) alleging violations arising out of EDS's acquisition of a Raleigh-based company named Infocel, Inc. (Infocel) as well as from their alleged wrongful discharge. Instituted originally in the Superior Court of Wake County, North Carolina, the action was removed to this court based on diversity of citizenship of the parties. In particular, plaintiffs allege in their first amended complaint five separate causes of action, including two class action counts maintained in their claims for breach of contract and fraud. The matter is presently before the court on plaintiffs' motion to certify this case as a class action pursuant to F.R.Civ.P. 23.

 A case may properly proceed as a class action under F.R.Civ.P. 23(a) if the following four requirements are met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In addition to the above, the court must find one of the following four conditions to exist as well: (1) the prosecution of separate actions would cause a risk of inconsistent adjudications, "which would establish incompatible standards of conduct for the party opposing the class," F.R.Civ.P. 23(b)(1)(A); (2) the prosecution of separate actions would "as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests," *id.* at (b)(1)(B); (3) the party opposing the class has acted against the class in a manner applicable to the class as a whole and the remedy sought is an injunction or declaratory judgment, *id.* at (b)(2); or (4) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," *id.* at (b)(3). These requirements under Rule 23(a) should be given "a liberal rather than a restrictive construction." *In Re A.H. Robins Company Inc.*, 880 F.2d 709, 740 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). The burden remains with plaintiffs at all times in establishing the aforementioned requirements. *Haywood v. Barnes,* 109 F.R.D. 568, 575 (E.D.N.C.1986). These prerequisites are mandatory and the failure to establish just one bars class certification. *Id.*

In the present case, plaintiffs maintain that they have satisfied all the threshold requirements of Rule 23(a) as well as the two requirements of 23(b)(3). EDS, on the contrary, has only challenged two of the requirements under Rule 23(a) and has failed to contest any of the other required elements. Specifically, EDS insists that plaintiffs have failed to satisfy the numerosity and typicality prerequisites. Consequently, the court will limit its discussion primarily to these two issues.

## I. *RULE 23(a) REQUIREMENTS*

### A. *Numerosity*

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. This prerequisite, however, does not require that joinder be impossible, *Coggin v. Sears, Roebuck and Company,* 155 B.R. 934, 937 (E.D.N.C.1993); 3B J. Moore, *Moore's Federal Practice* ¶ 25.05[3], at 23–151 (2d Ed.1993), and "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984) (*citing Cypress v. Newport News General and Nonsectarian Hospital Association,* 375 F.2d 648, 653 (4th Cir. 1967)). Instead, an "application of the rule is to be considered in light of the particular circumstances of the case." *Id.* Hence, a district court has broad discretion in deciding whether to certify a class and "generally, unless abuse is shown, the trial court's decision … is final." *Id.* (*citing Roman v. ESB, Inc.,* 550 F.2d 1343, 1348–49 (4th Cir.1976)). *See also Stott v. Haworth,* 916 F.2d 134 (4th Cir.1990) (district court exercises broad discretion in determining whether to permit case to proceed as class action).

Although no definite standard exists in determining what actual size is required under Rule 23(a)(1), previous cases cited by the parties and as noted in relevant authority, suggest that a class as large as seventy-four persons is "well within the range appropriate for class certification (citation omitted)." *Brady,* 726 F.2d at 145. In fact, circuit precedent has recognized class certification in classes with as few as eighteen members, *id.* (*citing Cypress,* 375 F.2d at 653 (eighteen members)), and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable. *In Re Kirschner Medical Corporation Securities Litigation,* 139 F.R.D. 74, 78 (D.Md.1991) (*citing Dameron v. Sinai Hos-*

**536**

pital of Baltimore, Inc., 595 F.Supp. 1404, 1408 (D.Md.1984)).

■ In the present case, plaintiffs seek certification for two separate counts in their first amended complaint. Count 3 of plaintiffs' second cause of action alleges a breach of contract based on EDS's promise to fund retirement benefits for Infocel employees who transferred to EDS based upon their Infocel hire date. Count 2 of plaintiffs' fourth cause of action alleges fraud in connection with EDS's promises concerning seniority-based employee retirement benefits. These amended counts are brought individually by the named plaintiffs and as a class action on behalf of all similarly situated employees. (First Amended Complaint ¶¶ 34–42, 56–70.) As a result, plaintiffs assert that there are seventy-four potential class members whose rights have become vested to date, with an estimated ten more to become vested through 1996.

■ Initially, EDS counters that in order to proceed with class certification, each of the proposed class members must meet the $50,000 jurisdictional amount for the court to even have jurisdiction under 28 U.S.C. § 1332(a)(1). *Zahn v. International Paper Company*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). According to EDS, only nine of the proposed class members have potential claims that would satisfy the amount in controversy (Exhibit 18, Attachment 1). In response, plaintiffs rely on 28 U.S.C. § 1367 to support their contention that *Zahn* has been effectively overruled. They assert that because class actions under Rule 23 of the Federal Rules of Civil Procedure are not listed as an exemption from Section 1367, the court may exercise its supplemental jurisdiction.

While there appears to be a line of federal authority in support of plaintiffs' contention, the vast majority of class action cases interpreting this statute have reached the opposite result. *Riverside Transportation, Inc. v. Bellsouth Telecommunications, Inc.*, 847 F.Supp. 453, 455 n. 7 (M.D.La.1994). As well, the legislative history of Section 1367 cites the Supreme Court's opinion in *Zahn* and provides that "[this] section is not intended to affect the jurisdictional require-

ments of 28 U.S.C. § 1332 in diversity-only class actions." H.R.Rep. No. 734, 101st Cong., 2d Sess. 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. pp. 6802, 6875. In any event, it is not inconceivable that a jury, upon a proper finding, could award plaintiffs punitive damages with respect to their fraud claim in excess of the jurisdictional amount, nor is there any evidence establishing to any legal certainty, that such an award is or would be unsubstantiated. *See Watson v. Shell Oil Company*, 979 F.2d 1014, 1021 (5th Cir.1992), *rehearing en banc granted*, 990 F.2d 805 (1993) (both compensatory and punitive damages must be considered in determining the amount in controversy) (*citing Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943)); *Petroleum Transit Company v. Copeland*, 240 F.Supp. 585, 586 (E.D.S.C.1965) ("mere belief by the Court that plaintiff will not recover the amount demanded is not a sufficient basis to deny jurisdiction; it must appear to a legal certainty") (*citing St. Paul Mercury Indemnity Company v. Red Cab Company*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). As such, EDS's contention that certain members are jurisdictionally barred from class certification is without merit.

■ Aside from this jurisdictional argument, EDS still insists that plaintiffs have failed to meet the "numerosity test." Of the seventy-six vested individuals, EDS asserts that only fifty-seven have a projected difference in retirement benefits if funding were to begin, as plaintiffs contend, on their Infocel start date rather than the June 1, 1991 EDS start date. Even under the assumption of this pared down number of potential class members, a determination of whether joinder of such individuals would be impracticable depends not on the mere number, but on all circumstances surrounding the case. *Robidoux v. Celani*, 987 F.2d 931 (2d Cir.1993). "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits." *Id.* at 936. Other factors such as lack of sophistication and reluctance to sue individually may also be

considered. *Roman v. Korson,* 152 F.R.D. 101 (W.D.Mich.1993). Differing levels of interest among the prospective class, however, is not dispositive and will not, by itself, defeat class certification. *Jenson v. Eveleth Taconite Company,* 139 F.R.D. 657 (D.Minn. 1991). More importantly, where the numerosity question is a close one, the trial court should find that numerosity exists, since the court has the option to decertify the class later pursuant to Rule 23(c)(1). *Coleman v. Cannon Oil Company,* 141 F.R.D. 516 (M.D.Ala.1992). *See also Foster v. Bechtel Power Corporation,* 89 F.R.D. 624 (E.D.Ark. 1981) (balance should be struck in favor of finding numerosity in close case). *Accord Tolbert v. Western Electric Company,* 56 F.R.D. 108, 113 (W.D.Ga.1972) ("the wise practice is to allow such cases to proceed, at least at the onset, as class actions").

Having considered these factors and upon a careful review of the record, the court finds that the numerosity requirement is met. Evidence has been presented that at least fifty-seven individuals, some of whom are geographically dispersed from this region, could potentially fall within the putative class. Albeit that most of the class members have been readily identified and are likely subject to service, the court remains persuaded that joinder is impracticable in that it would place an untenable burden and costs on these putative class members as well as drain the court's time and resources. Common sense also dictates that class members would suffer financial hardship and inconvenience in having to litigate an individual claim against EDS inasmuch as many of the class members' stake in a potential increase in their retirement pay is probably not enough to warrant litigating an individual claim against EDS. *See Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"). Finally, certifying the class would undoubtedly avoid taxing the court with a rash of lawsuits adjudicating the same issues and involving the same defendant. *See Klamberg v. Roth,* 473 F.Supp. 544, 558 (S.D.N.Y.1979) (seventy class members are sufficiently numerous in pension plan case particularly in light of substantial identity of claims). As such, the court finds that the numerosity requirement has been satisfied in the present case.

*B. Commonality*

 The next requirement under Rule 23(a) is that there be questions of law and fact common to the putative class members. This commonality requirement has been liberally construed and "those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts (citation omitted)." *Haywood,* 109 F.R.D. at 577. This subsection does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist. *Id. See also Central Wesleyan College v. W.R. Grace & Company,* 143 F.R.D. 628, 636 (D.S.C.1992), *aff'd,* 6 F.3d 177 (4th Cir.1993) (not requiring that all or even most issues be common). Lastly, "a class action will not be defeated solely because there are some factual variations among the members' grievances." *Haywood,* 109 F.R.D. at 577 (*citing Patterson v. General Motors Corporation,* 631 F.2d 476 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981) (other citations omitted)).

 In the case at bar, common questions of law and fact clearly exist. Worthy of note, EDS has not taken issue with plaintiffs' ability to satisfy this requirement. Consequently, the court finds, inter alia, the following questions common to the prospective class:

1. Whether EDS expressly agreed that if EDS exercised its right to acquire the remaining outstanding shares of Infocel, EDS would allow credit to all Infocel or GeoBased Systems employees for their prior service with Infocel, GeoBased Systems or their predecessors who remained with Infocel, GeoBased Systems or EDS after the exercise of the option when de-

termining both their eligibility for all seniority-based benefits provided by EDS and the amount of such benefits;

2. Whether, based upon the express promises of EDS concerning seniority-based employee benefits, Infocel and EDS executed an Amended and Restated Option Purchase Agreement with an effective date of June 1, 1991 pursuant to which EDS exercised its rights under the 02/06/90 Purchase Agreement and the 03/16/90 Option Purchase Agreement to acquire the remaining outstanding shares of Infocel;

3. Whether EDS' refusal to provide credit when calculating the amount of EDS seniority-based benefits constitutes a breach of the agreement between EDS and Infocel of which members of the prospective class are third-party beneficiaries;

4. Whether, at the time that EDS made representations to the plaintiffs concerning their treatment for purposes of determining their EDS seniority-based benefits, EDS had no intention of honoring said representations; and

5. Whether EDS made such representations concerning EDS' seniority-based benefits with knowledge that such representations were untrue or whether they were made recklessly and wantonly without sufficient knowledge as to their truth.

Therefore, the commonality requirement has been satisfied.

### C. Typicality

The court must next determine whether the typicality requirement of Rule 23(a) is satisfied. This element is met "if [the plaintiffs' claims] arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [plaintiffs'] claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993) (*quoting De La Fuente v. Stokley–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). The typicality requirement essentially merges with the commonality requirement since both relate to whether the claims of the plaintiffs and those of the class are so similar as to insure that the class

members' interests will be sufficiently protected. *Stott v. Haworth, supra* at 143 (*citing General Telephone Company of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)). Courts will generally look to the defendant's alleged conduct and the legal theory advanced by the plaintiff to determine whether certification is appropriate. *Rosario,* 963 F.2d at 1018. A court may determine that the typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical. *Eisenberg v. Gagnon,* 766 F.2d 770, 787 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 90 (1985).

In order for the typicality requirement to be met, class representatives must not have an interest that is antagonistic to that of the class members and must have suffered similar injuries. *Edgington v. R.G. Dickinson and Company,* 139 F.R.D. 183, 189 (D.Kan.1991). Factual differences in the respective claims are not fatal to certification as long as the injuries stem from the same course of conduct and are premised on the same legal theory. *Id.* Moreover, in considering whether certification is proper, a court should not delve into the merits of the case. *In Re Revco Securities Litigation,* 142 F.R.D. 659, 662 (N.D.Ohio 1992).

EDS asserts that the typicality requirement of Rule 23(a) is lacking in the present case. In support of its argument, EDS contends that there are at least some claims and defenses unique to the named plaintiffs which would not apply to a majority of the putative class members. Particularly, EDS maintains that one of plaintiffs' claims is that they entered into the 30% and 100% agreements based on EDS's alleged representations that they would receive benefit credit for their Infocel service. Similarly, EDS argues that its defense that the breach of contract and fraud claims are barred by the merger and integration clause in the 100% agreement would only apply to those who executed the agreements. Since only a subclass of the class members signed the two agreements, EDS insists that typicality is not satisfied. *See Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461

(D.D.C.1984) (presence of defense peculiar to named plaintiffs or subset of class could destroy typicality of class).

 It is true that the typicality requirement may not be satisfied when a class representative is subject to a unique defense that could potentially dominate the litigation. *Gary Plastic Packaging Corporation v. Merrill Lynch,* 903 F.2d 176, 180 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). However, the mere availability of certain defenses against a class representative may not destroy typicality, *Haywood,* 109 F.R.D. at 578, and it is improper for the court in considering class certification to examine the merits of the case. *Eisenberg,* 766 F.2d at 787. Moreover, "typicality does not require that the claims or defenses of the class representatives be identical or perfectly coextensive with the claims or defenses of the members; substantial similarity of legal theory will be sufficient even in the face of differences of fact." *Haywood,* 109 F.R.D. at 578 (citations omitted). The typicality requirement merely stresses that the class representatives " 'ought to be squarely aligned in interest with the represented group.' " *Id.* (citations omitted).

In view of the above and after a careful consideration of the record as it now exists, the court concludes that the claims of the named plaintiffs for breach of contract and fraud are typical of those of the putative class they seek to represent and that the named plaintiffs would adequately represent the interests of the proposed class, irrespective of any alleged unique defenses. To hold otherwise, would require the court to improperly intrude into the merits of one or both of the claims. Besides, the court finds that a major focus of this litigation will primarily concern alleged representations made by EDS, negotiations between the parties regarding retirement benefits and the class members' reliance thereof, all of which might evidence that both the class members and the named plaintiffs are entitled to relief based on EDS's same course of conduct. As such, plaintiffs have satisfied the typicality requirement of Rule 23(a). Of course, the court reserves the right to alter or amend its decision in the light of the record as it then exists before a final adjudication of the case on the merits. F.R.Civ.P. 23(c)(1).

### D. *Adequacy of Representation*

 The final requirement that must be satisfied under Rule 23(a) is whether the class members will be fairly and adequately protected by the class representatives if this court decides certification is warranted. This element requires the court to engage in a two-step analysis. First, the court must determine whether the named class representatives have interests that are antagonistic to those of the class members. Second, the court must find that the class would be represented by qualified counsel who will vigorously prosecute the action. *Scholes v. Tomlinson,* 145 F.R.D. 485, 490 (N.D.Ill. 1992).

In the present case, EDS does not challenge this requirement and the court finds that both of the elements stated above are satisfied. The record is devoid of any evidence reflecting any potential conflict between the interest of the named plaintiffs and the class members. Furthermore, the court does not doubt that plaintiffs' counsel are both qualified and experienced. Thus, the fourth element of Rule 23(a) is satisfied.

### II. *RULE 23(b) REQUIREMENTS*

 Having found that plaintiffs have satisfied the prerequisites of Rule 23(a), the court must now examine whether certification is appropriate under Rule 23(b). Plaintiffs contend that—as required by Rule 23(b)(3)—common issues of law and fact in this case predominate over issues that relate solely to the claims of individual class members. In addition, plaintiffs maintain that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Once more, EDS has failed to dispute this requirement or contest any of the other elements under this subdivision.

Upon a thorough examination of the record the court is convinced that Rule 23(b)(3) is satisfied. The liability issues with respect to the breach of contract and fraud claims are common to the class and predominate over

any questions only affecting individual members. *In Re Kirschner,* 139 F.R.D. at 80. As well, the court finds that because of the relatively small individual losses suffered by the potential class members based on their increased retirement benefits and due to the prohibitive costs of litigating each claim separately, a class action is the most effective method of fully adjudicating this controversy. The court makes this finding having considered the relevant factors listed in Rule 23(b)(3)(A–D).

### III. *CONCLUSION*

Accordingly, plaintiffs' motion to certify this action as a class action is granted with respect to plaintiffs' second and fourth causes of action. The members of the class shall include all persons who are former employees of Infocel or GeoBased Systems, Inc. who remained employed by Infocel, GeoBased Systems, Inc. or EDS following EDS's exercise of the EDS option and acquisition of Infocel as of June 1, 1991 and who were entitled to seniority-based and retirement benefits. Excluded from the class are individuals who admittedly have a zero difference in their projected retirement benefits even considering their past service with Infocel. In the event that this case is not resolved at the summary judgment stage, plaintiffs' counsel will then be directed to submit a draft of their proposed notice form to the court and opposing counsel will be permitted to file objections, if any, to this form.

SO ORDERED.